# Wytheville.

## EGGLESTON V. EGGLESTON AND OTHERS.

### June 10, 1920.

1. DEMURRERS—*Admissions—Allegations in Bill.*—Upon demurrer to a bill in equity, the allegations in the bill must be taken as true.

2. MORTGAGES AND DEEDS OF TRUST—*Absolute Deed as Mortgage—Presumption.*—The presumption is that a conveyance is what it purports to be upon its face, and, in order to prove that a deed absolute in form is in fact merely a mortgage, clear and convincing proof is required.

3. MORTGAGES AND DEEDS OF TRUST—*Absolute Deed as Mortgage—Parol Evidence.*—What appears to be an absolute conveyance may in equity be shown by sufficient parol evidence to be only a security for a debt.

4. MORTGAGES AND DEEDS OF TRUST—*Absolute Deed as Mortgage—Case at Bar.*—In the instant case the facts alleged in the bill and admitted by the demurrer clearly and unequivocally made out a case in which the conveyance, notwithstanding its form, was intended only as a security for future advances then agreed upon and thereafter made by grantee to grantor, and that there was a parol agreement by the grantee to reconvey to the grantor, upon repayment by the grantor of these advances within a reasonable time.

   *Held:* That no rights of creditors or subsequent purchasers having intervened, the arrangement thus established was valid and enforceable as between the parties; and, that the grantee had the right to repay the advances and thereby redeem the property and entitle himself in equity to a reconveyance of the title.

5. MORTGAGES AND DEEDS OF TRUST—*Absolute Deed Intended as Mortgage—Deed Absolute When Time for Repayment Expires.*—Where a deed absolute in form was intended as a mortgage, the stipulation in the parol agreement for reconveyance, which provided that the deed should be absolute, if the grantor failed to repay the grantee within the time contemplated by the parties, would become effective if both parties allowed that time to expire with the purpose on the part of both to treat the deed as absolute.

Appeal from a decree of the Hustings Court, Part II., of city of Richmond. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*T. Justin Moore,* for the appellant.

*W. D. Miller* and *J. P. Flanagan,* for the appellees.

KELLY, P., delivered the opinion of the court.

This appeal brings before us three decrees which respectively sustained demurrers to an original and two amended bills. Under circumstantial variations, each of the bills stated substantially the same case. The material facts alleged, abbreviated from the fuller and more detailed statements in the bills, are as follows:

The complainant, Joseph E. Eggleston, in 1912 purchased a house and lot in South Richmond, which he has since occupied as a residence. When he bought this property, there was a deed of trust upon it which he renewed, and which he will be able to further renew and extend, provided he does not lose control of the title by reason of the matters against which he seeks relief in this suit.

Prior to June 4, 1917, the complainant had failed or been unable to pay certain taxes and other claims properly chargeable against the property, amounting to about $1,200, and on that date he and his wife, by deed duly executed and recorded, conveyed the property to one Nannie M. Baker, subject to the deed of trust above mentioned. This conveyance appeared on its face to be a deed of bargain and sale, but the real consideration therefor was an agreement on the part of Baker to pay or provide the funds with which to pay the aforesaid taxes and other charges, and to hold

the title merely as security for a reasonable time, estimated at three or four years, in order to give the complainant time and opportunity to reimburse her for the funds to be thus advanced on his account. If the complainant failed within the time aforesaid to reimburse her, then the said Baker was to become the absolute owner of the property without any foreclosure proceedings, the trouble and expense of which she desired to avoid.

The purpose of this arrangement, as fully understood and agreed upon by both parties, was to satisfactorily secure Baker, and to enable the complainant to pay debts which were then pressing him, and at the same time to hold on to his home if he could within the time contemplated repay the advances thus secured. The fair market value of the property did not exceed the amount of the original deed of trust by which it was still incumbered, plus the advances to be made by Baker; but the complainant did not wish to sell his home at that aggregate price if he could avoid it, and Baker was not willing to take it as security except in the form and under the arrangement above set out.

Shortly after the above agreement was reached and the deed executed and recorded, Baker informed the complainant that she found it impracticable and undesirable to render performance on her part; and thereupon it was mutually agreed between her and the complainant and his brother, George M. Eggleston, the latter knowing all the facts hereinbefore set out, that the property should be conveyed by Baker to George M. Eggleston, who was to simply step into her shoes and take the property exactly as she had taken it.

The conveyance was accordingly made by Baker to George M. Eggleston, and (quoting now literally from the bill) it was then "distinctly understood and agreed between complainant and his brother, the defendant, George M. Eggleston, just as it had been understood and agreed between the complainant and Nannie M. Baker, that the consideration

for the conveyance was the agreement on the part of George M. Eggleston to pay certain debts of complainant, partly taxes and other charges against the property, all of which amounted to about twelve hundred dollars ($1,200.00), and that the said George M. Eggleston should hold title to the said property merely as security for the advances to be made by him, for a reasonable time, which reasonable time it was understood would probably be three or four years, and that he would thus give complainant reasonable time and opportunity to reimburse the said George M. Eggleston all amounts advanced or expended by him on the property or in payment of the debts of your complainant, and that, if and as soon as your complainant did become able, he must repay to the said George M. Eggleston all advances and expenditures which had been made by the said George M. Eggleston in the payment of the debts of your complainant and on the upkeep of the property, and that he would thereupon become entitled to a reconveyance of the said property by the said George M. Eggleston without payment of any further consideration. It was fully realized and understood by the parties to said agreement that the fair market value of the property was not in excess of the amount of indebtedness secured by the first deed of trust, and the amount of debts which the said George M. Eggleston agreed to pay, and that the said agreement and arrangement was really for the benefit of your complainant's creditors, that for commercial and marketable purposes your complainant would have no equity left in the property, but that the property did have a peculiar personal value to your complainant, since it had been his home for many years, and it was the desire of himself and his wife to continue to make the property their permanent home."

[1] Without setting out in full the further allegations of the bill, it is sufficient for the purposes of this opinion to say that, taking them to be true as we must upon the de-

43

murrer, they show that George M. Eggleston procured and made certain advances on the indebtedness; that he many times subsequently discussed and always recognized the alleged arrangement and his obligation to reconvey the property in accordance therewith, until on or about January 15, 1919, when the complainant became able to repay the advances, and so notified George M. Eggleston, who thereupon submitted to him a statement purporting to show the amount to be repaid; that this statement contained one or more palpable errors against the complainant; that, being unable to agree on the true amount, the matter was submitted to three arbitrators, to all of whom George M. Eggleston admitted that he held the property for the complainant, and was bound to reconvey it in accordance with the understanding and agreement hereinbefore set out; that the arbitrators unanimously found in substantial accord with the statement of account as contended for by the complainant; that the complainant then offered, and has ever since been ready, willing and able to settle in accordance with the findings of the arbitrators, and is now ready to do so, or to pay into court any amount which the court may declare to be due from him under the agreement and understanding of the parties; that after the award of the arbitrators had been announced, the said George M. Eggleston and his wife executed a deed to complainant for the property, but declined to deliver it except on the payment by complainant of a sum named in excess of the true balance; that George M. Eggleston, from the time the property was conveyed to him down to the present time, has insisted that he did not desire any profit from the transaction, and yet declines to reconvey the property unless and until the complainant shall pay to him an arbitrary sum in excess of the true balance due, and refuses to give any account for the difference between the sum he demands and the smaller sum fixed by the award of the arbitrators; that George M. Eggleston is insolvent,

and is offering to sell, and unless restrained by injunction, probably will sell, the property involved to an innocent purchaser, so that complainant will sustain an irreparable loss.

No grounds of demurrer were filed, and the record is here simply upon the original and amended bills, the demurrers thereto, and the several decrees sustaining the demurrers. The last of these was final and dismissed the bill. An injunction was awarded upon the original bill, restraining George M. Eggleston from selling the property, and this injunction was never dissolved and remains in force under the suspension order below and supersedeas awarded by this court. There has been no appearance here for the appellee, and the case was submitted to us *ex parte* on the petition and brief of the appellant.

[2, 3] We are of opinion that the demurrers should have been overruled. The presumption in cases of this kind is that a conveyance is what it purports to be upon its face, and in order to prove that a deed absolute in form is in fact merely a mortgage, clear and convincing proof is required. But it is equally well settled that what appears to be an absolute conveyance may in equity be shown by sufficient parol evidence to be only a security for a debt. This proposition, as Judge Whittle said in *Holladay* v. *Willis,* 101 Va. 274, 278, 43 S. E. 616, 617, "is too well settled to require either discussion or citation of authority to sustain it."

[4, 5] The facts alleged in the bill, admitted by the demurrer, clearly and unequivocally make out a case in which the conveyance, notwithstanding its form, was intended only as a security for future advances then agreed upon and thereafter made. These advances constituted a personal indebtedness from Joseph E. to George M. Eggleston, with the deed as security. No rights of creditors or subsequent purchasers have intervened, and as between the parties the arrangement thus established was valid and enforceable. 1 Jones on Mortgages (5th ed.), secs. 364-368. George M.

Eggleston had the right to enforce the indebtedness thus arising against Joseph E. Eggleston, personally, or against the property, or both; and, in turn, Joseph E. Eggleston had the right to pay the same, and thereby redeem the property and entitle himself in equity to a reconveyance of the title. 1. Jones on Mortgages (5th ed.), secs. 265, 268, 324; 19 R. C. L., p. 261, sec. 29; *Idem.* p. 265, sec. 33; 27 Cyc. 1029. That part of the agreement which provided that the deed should be absolute if Joseph E. Eggleston failed to repay the advances within the time contemplated by the parties would have become effective if both parties had allowed that time to expire with the purpose on the part of both to treat the deed as absolute. 1 Jones on Mortgages (5th ed.), sec. 338.

The decrees complained of will be reversed, the demurrers overruled, and the cause remanded for further proceedings to be had herein consistent with the views expressed in this opinion.

*Reversed.*