## Wytheville

M. D. MAGEE v. ANNIE SHORT KEY, ET AL.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Browning
and Eggleston, JJ.

The opinion states the case.

*John H. Cole* and *Robert W. Arnold*, for the appellant.

*James T. Gillette*, for the appellees.

Browning, J., delivered the opinion of the court.

The suit with which we are here concerned grew out of another suit, which was filed in the early spring of 1931, which had for its object the subjection of the lands of which a colored man named Short died, seized and possessed, to the payment of his debts. Both are suits in chancery.

The first suit progressed to the point of a sale by a special commissioner of the land in the bill and proceedings mentioned, that is, two tracts, one containing 67.5 acres and the other containing 107.1 acres. The sale was at public auction and Annie Short, the widow of the deceased landowner, became the purchaser at the price of $2,275.00. The original suit was instituted by M. D. Magee, the appellant, whose name was signed to the bill, with this legend: "Who sues in his own right and on behalf of all other creditors of Willie Short, deceased, etc.," by Thomas H. Howerton, his attorney.

Magee, who is a merchant and postmaster, residing in the same neighborhood as the Shorts, and with whom they had been trading for a number of years, was the principal creditor. The accounts of Willie Short and Annie Short represented a sum due to him in excess of $800.00.

Annie Short paid to the commissioner, Howerton, in cash, the sum of $800.00. This she acquired from her husband's insurance, she being the beneficiary. This was all the money which she had and it became necessary for her to make some arrangement for the payment of the residue of the purchase price. She sought the aid of M. D. Magee. It appears that the sum she paid in cash with the amount due Magee, which was $796.24, and her dower, the commuted value of which was $464.47, and $50.18 which the Short estate owed to her, and $450.00 which was paid the commissioner, for Annie Short, by M. D. Magee, aggregated the sum of $2,560.89, which was $285.89 more than the purchase price of the land.

The appellant's brief contains this statement with reference to this excess: "We suppose that this was an error in calculation."

It appears that, with reference to the matter in the be-

ginning, Annie Short and Mr. Magee had some sort of agreement in the office of Magee, at his store. Magee contends that he declined to allow the debt to him and $450, which he agreed to pay to the commissioner for Annie, to be secured by a deed of trust on the lands, because he did not regard the security as adequate, but he insisted upon Annie securing a deed from the commissioner and to accomplish this he was willing to pay the $450, provided Annie would pay this back on January 1, 1932. But this was conditioned upon the agreement of Annie to convey to him absolutely the two tracts of land, he agreeing that if the January 1, 1932, payment were promptly met, to reconvey the lands to her and take a deed of trust on the lands securing the balance of the Short indebtedness due him.

Annie Short's version of the agreement between herself and Magee was that she would buy the lands and secure a deed from the commissioner and execute a deed of trust, simultaneously, to secure the indebtedness due him by the Short estate plus the amount which Mr. Magee was to furnish, to be paid to the commissioner, in order to secure the deed.

Thus we are confronted by the contentions of Magee that the transaction constituted what is known as a conditional sale and that, the grantor, Annie Short, having failed in the performance of the condition, it became an absolute one.

The existence of this condition and its consequent is denied by Annie Short, whose contention is that the deed that she made to Magee, with the agreement of the same date entered into by herself and Magee, together with the facts and circumstances afforded by the evidence shows that a deed of trust or mortgage was the intention of the parties.

With the matter in the state that has been described, Annie Short, who by marriage became Annie Short Key, and her husband, Key, remained in possession of one of the tracts of land and a man named Edgar Parham was in possession of the other. Magee testified that he collected

rent from both of the parties, which totaled $150 per year. In his brief and his testimony he describes them as remaining in possession but as his tenants.

After about four years, Annie Short Key instituted the suit in judgment, praying that her deed to M. D. Magee, dated July 22, 1931, be declared by the court to be a deed of trust, for the amount of the consideration expressed therein, and further praying that Magee should be required to collect from the special commissioner her commuted dower interest and another interest which she had in the former suit and that he be required to credit her with the sum of $325, which she had paid to him and which he erroneously collected as rent, and that he be compelled to reconvey the lands to her, etc.

Her bill, which was filed in the present suit, set forth in detail the facts which we have described and Magee and the special commissioner, Mr. Howerton, were made parties defendant. They filed their answers and evidence was taken in the form of depositions, and the court, by its decree of August 22, 1936, held that the consideration stated in the deed of bargain and sale was an aggregate sum constituting a debt due by Annie Short Key to M. D. Magee and that this deed, and the contract of like date, signed by M. D. Magee and Annie Short, purporting to be a conditional sale, operated, in effect, when construed together in the light of the evidence, as a deed of trust, to secure to Magee certain indebtedness, to be ascertained in the cause, and the papers were to have no other effect. From this decree an appeal was allowed by this court.

It appears from the evidence that Annie Short Key is an ignorant colored woman and a very simple one; that she confided in other people and trusted them with the care and adjustment of her business affairs. Her own testimony shows that she knew very little of the intricacies of business and was densely ignorant of the legal effect of the papers which she entered into, respecting the purchase of

the lands which formerly belonged to her husband, and which she desired to acquire and own in her own right.

There are several bold and patent facts which stand out in this case and which, we think, shed light upon the issue and serve to point to a right conclusion of the matter.

The first is that Annie Short Key had $800 in cash which she wanted to use in the accomplishment of the end she had in view. She did so use it.

Second, she had paid out a small amount of money for her husband's estate and this was to be paid back to her and she also had a dower interest in her husband's lands, which she agreed to have commuted, and the amount of money to be realized from these two sources exceed the sum of $500, and this she wanted to go into the purchase of the lands coveted by her.

Third, at a public auction sale of the said lands she became the purchaser at the price of $2,275. In a little more than a month and a half she executed the papers referred to, one of which was a deed of bargain and sale, conveying to Magee the identical lands for the consideration of $1,321.50. The disparity and the attendant circumstances are, to say the least, remarkable, but they are potent in affording some clarity of a situation which is involved in obscurity.

Of these circumstances, it is startling to note that neither Mr. Magee nor Mr. Howerton had any accurate knowledge of how the sum of $1,321.50, the consideration named in the deed of bargain and sale, executed by Annie Short to Mr. Magee, was arrived at. Mr. Howerton said he could not tell to save his life. Annie Short testified that Mr. Magee computed the sum, yet he was indefinite when asked to account for it. Annie knew nothing about it. One thing she stoutly adhered to was the notion that the paper was a deed of trust.

The following quotations from her testimony on cross examination are pertinent:

"Q. Annie, you have instituted a suit here against M. D. Magee and Thomas H. Howerton. Do you know what the suit is about?

"A. Yes, it is about the land and the money.

"Q. Now, what do you mean by that?

"A. Mr. Magee and his son took me to Waverly on his car, and I could not make the payments and I asked him to pay it over until I could, and this is the way the land has been ever since.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. But you did make the deed to him, didn't you?

"A. Yes, the deed of trust. The real deed, I have never had the real deed.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Now, please state what it is that Mr. Magee has not done that he agreed to do.

"A. He done everything he agreed to do, excusing he hasn't done anything about the land. I am still renting."

This ignorant woman was bewildered about it all but she clung to the conviction that the matter was not fixed as she had understood it would be and as she thought it was.

Still another one of the circumstances which is inexplicable is that Magee said that he did not employ Mr. Howerton as his attorney and that he did not authorize him to institute the "Short" suit; that the suit was instituted without his knowledge and consent and that he knew nothing of the sale of the land. He did not know when it would be sold. He did not know what the land sold for, and this in the face of the fact that he had made up an account of the Short indebtedness to him and posted it to Mr. Howerton, an attorney, who instituted the suit upon it in the name of Magee, the creditor.

It will be noted that when Magee and his son took Annie Short to Howerton's office, when and where the papers covering the transaction were prepared and executed, Howerton suggested that a deed of trust was "best to have."

This suggestion, of course, was made by the attorney because he thought it was the proper method to accomplish what the contracting parties had in mind. It is confirmatory of Annie Short's position in the matter all the way through.

Important to note in this connection is the answer of Mr. Magee when the following questions were asked him:

"Q. Mr. Howerton said that he suggested that you take a deed of trust from Annie Short after he had given her her deed, and that you suggested otherwise. Is that a fact?

"A. I did not say. It wasn't up to Mr. Howerton to say whether I did or whether I didn't. I had to say so. We went there to keep the agreement that Annie and I had in my office."

This answer to a simple question was evasive, not responsive, and defiant.

It is significant that the receipt, which Mr. Howerton, as special commissioner, gave to Annie Short for the cash payment of $800, in its original form contained a stipulation giving to her the right to pay the balance on or before December, 1932. This provision was marked out by Mr. Howerton on the day the parties visited his office and executed the papers, which was July 22, 1931, though the original receipt was written on June 5, 1931.

The agreement, which was the companion paper to the deed of bargain and sale which was executed by Annie Short to M. D. Magee, provided for the payment to Magee of $450 on or before January 1, 1932, and if this condition were performed Magee would reconvey the lands to Annie Short, or anyone she might suggest, and take a deed of trust securing the balance of the purchase price with accrued interest, and the further provision that Annie Short was to pay the taxes and the insurance for 1931. It was further provided that if Annie Short failed to perform this condition that the titles to the property would be forever vested in Magee.

From the facts revealed by the testimony it is patent that there was little or no chance for one in Annie Short's circumstances to meet this condition and thwart the forfeiture which must ensue.

In Minor on Real Property, vol. 1, page 686, section 605, it is said: "A conditional sale is not a security for money, but is what its designation imports, namely, a sale in good faith, * * *. Of course, therefore, no equity of redemption is incident to such a sale, because, as it is not the design of the transaction to secure the payment of money, * * *.

"As a conditional sale has no equity of redemption incident to it, the attempt is not unfrequently made to give to what is really in purpose and intent a mortgage, the aspect of a conditional sale; and as the terms in which they are conceived are very similar, it is usually requisite to resort to parol evidence, extrinsic to the deed creating the estate, to determine the true character of the transaction. If, upon the whole investigation, it shall appear that a security for money was intended, it is a mortgage, whatever may be its terms; * * *. And if, on the other hand, it shall, upon the whole, appear that it was a conditional sale, the performance of the condition punctually at the time cannot be dispensed with. But doubtful cases are generally declared to be mortgages."

It was said in the case of *Holladay* v. *Willis*, 101 Va. 274, 280, 281, 43 S. E. 616, 618: "The character of a transaction is fixed in its inception, and is what the intention of the parties makes it. If it was a mortgage originally, it remains so; and the same is true of a conditional sale. In either case, it is unaffected by subsequent events, unless they amount to a change of contract. The form of the transaction and the circumstances attending it are but the means of ascertaining the real intention of the parties."

In the opinion in the above case is the following: "In *Sadler* v. *Taylor*, 49 W. Va. 104, 38 S. E. 583, the rule is stated thus: 'If, by the intention of the parties, the transaction

was originally a security for the payment of money, it will be held in equity to be a mortgage, and the maxim, "Once a mortgage, always a mortgage," applies, and it will remain such, unless changed by a new contract. * * *'."

The matter as it stood before the present suit was instituted was that Magee had collected all the money which was due him by notes and open account and, in addition, he had title to the lands, was actually collecting annual rentals amounting to more than $150 per year, which is an income of about eleven and one-half per cent upon the amount of money stated in the deed as the consideration, and Annie Short Key was in the sorry plight of a renter of the lands which belonged to her deceased husband and which she thought she had secured for herself, and she had seen $1,250, all that she possessed, lost.

The decree of the trial court is without error and, therefore, we affirm it.

*Affirmed.*