**In re SEVEN SPRINGS, INC., Debtor.**

**SEVEN SPRINGS, INC., Plaintiff,**

v.

**Neil ABRAMSON, Chesapeake Golf, LP, Richard W. Hudgins, Trustee, Maurice Steingold, Jerbam, Inc., George Hodor, Leon Pollack, Patsy Kole, Glen McCarthy, City of Chesapeake, Defendant.**

**Bankruptcy No. 91–25189–T.
Adv. No. 92–2030–T.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

April 14, 1993.

John L. Smith, Jr., Outland, Gray, O'Keefe & Hubbard, Chesapeake, VA, for Maurice Steingold and Jerbam, Inc.

Bruce H. Matson, William A. Broscious, Otto Konrad, Hazel & Thomas, P.C., Richmond, VA, for Seven Springs, Inc.

Joseph R. Mayes, Virginia Beach, VA, for Patsy Kole.

Richard W. Hudgins, Newport News, VA.

William F. Devine, Hofheimer, Nusbaum, McPhaul & Samuels, Norfolk, VA.

John D. Padgett, Jett, Berkley, Furr & Padgett, Norfolk, VA.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On October 8 and 9, 1992, trial was held in this adversary proceeding on the debtor Seven Springs' complaint to quiet title to real property. Although there are a number of claims against the property held by various defendants, the only matter still in dispute is raised by a counterclaim of defendant Maurice Steingold. The counterclaim asserts that Steingold and other creditors of Vidco, Inc., hold a security interest in the subject real property. Subsequent to trial the parties have filed briefs.

For reasons stated in this opinion, Steingold's counterclaim will be denied and judgment entered on the complaint in favor of the plaintiff Seven Springs, subject to the undisputed other claims against the property.

### Findings of Fact

In August 1983 a holding company called the Hodges Trust purchased a 464 acre tract of real estate located in Chesapeake, Virginia ("original tract"). The sole purpose of the Hodges Trust was to purchase and hold this property in trust for Vidco, Inc. ("Vidco").[1] At the time of the purchase Vidco contracted with the Hodges Trust for options to purchase the property in segments staggered over a four year period. Vidco intended to turn the original tract into a golf course and country club surrounded by a residential community called Las Gaviotas. Lenders financing this project included Maurice Steingold and other entities in which Steingold held interests.

Although Vidco had not purchased all of the property, the company developed and made improvements to the entire original tract; this included laying the sewer system, building roads, constructing buildings, grading and seeding the golf course. Vidco was in the midst of financial difficulties when the option to purchase a 52 acre segment which it had developed into eight holes of the golf course ("eight holes par-

---

1. Vidco was a development company founded and, when the original tract was purchased, principally owned by David Obenauer. Obenauer severely mismanaged Vidco. He abandoned the company while it was in the midst of financial crisis. Obenauer transferred all of Vidco's stock to David Gibson who later transferred it to Bedford Golf, a company wholly owned by Andrew Kole. Kole was unable to find financing to service Vidco's numerous debts; on January 9, 1989, Vidco filed a chapter 11 case. *In re Vidco, Inc.,* Case No. 89–00049–NT (E.D.Va.1989). Vidco was never able to find its financial footing, and the case converted to Chapter 7 in December 1990. At the time of trial Kole was still the sole stockholder the corporate owner of Vidco as well as the sole shareholder of the current debtor.

cel") was scheduled to expire. Vidco had approached a number of potential lenders, including Kennedy Funding, Inc., and Stockbridge Funding, Inc. ("Kennedy and Stockbridge")[2] but failed to arrange financing. Vidco had also approached Steingold for additional loans. Although Steingold urged Vidco to exercise the option, he was unwilling to provide the necessary funding. In March 1988, approximately a month after Vidco's option to buy the eight holes expired, Kennedy and Stockbridge purchased the eight holes parcel from the Hodges Trust for $493,000.00.[3] The instrument of conveyance was a deed of bargain and sale (in fee simple) from Hodges Trust to Kennedy and Stockbridge. (Steingold/Jerbam Exhibit A).

After they acquired title Kennedy and Stockbridge gave Vidco an option to purchase the eight holes parcel for $650,000.00; this option was periodically renewable upon Vidco's payment of renewal fees. In return Vidco extended an option to Kennedy and Stockbridge to purchase the other ten holes of the golf course, the part of the golf course Vidco had purchased from Hodges Trust. Vidco continued to have financial problems, and although the corporation paid for at least one extension of its option to buy the eight holes parcel, it could not find a lender willing to finance the purchase. No longer able to pay extension fees, Vidco allowed its purchase option to expire, and shortly afterwards Kennedy and Stockbridge sold the eight holes parcel to the debtor for 680,000.00. (Steingold/Jerbam Exhibit H).

### Position of the Parties

In summary, the debtor Seven Springs claims to hold fee simple title to the property in question, subject only to a real estate tax lien, a deed of trust to Hodor and Pollack,[4] and a deed of trust to Patsy (Mrs. Andrew) Kole.[5] Steingold, supposedly on behalf of Vidco and all its creditors, asserts that Vidco holds an equitable mortgage interest in the eight holes parcel, which encumbers Seven Springs' title. He also maintains that Seven Springs is the alter ego of Vidco.[6]

### SEVEN SPRINGS.

Debtor's position has two main points. First, debtor holds fee simple title deed to the eight holes, and there are no written instruments which cloud that title. The eight holes is one parcel out of the original 464 acre tract purchased by Hodges Trust. The Hodges Trust conveyed the eight holes to Kennedy and Stockbridge in fee simple, and there is no written evidence that the conveyance from the Hodges Trust to Kennedy and Stockbridge was anything other than that shown on the face of the deed. Quite simply debtor maintains Vidco never owned the eight holes parcel and therefore cannot be an equitable mortgagor of the property.

Debtor's other point involves an examination of defendant Steingold's motives. Debtor believes that Steingold seeks additional collateral for the loans made to Vidco. In attempting to link Seven Springs to Vidco, Steingold looks to the court to correct his earlier poor business judgement and reward his inflexibility in dealing with both debtors, Vidco and Seven Springs.

### STEINGOLD.

The fundamental position asserted in Steingold's counterclaim is that the appar-

---

2. Kennedy Funding Inc., a New Jersey Corporation and Stockbridge Funding Corp., a New York Corporation are both private lending institutions. Neither Kennedy nor Stockbridge did business with Vidco before or after this transaction, and no other relationship between Vidco and the two corporations has been established.

3. Steingold claims that this price represents the raw land value, and, due to improvements by Vidco, the land was actually worth much more than the sale price. Steingold did not offer evidence to prove the actual value of the land even though he relies on this assertion to construe the intent of the parties.

4. Hodor and Pollack provided the primary financing which enabled Seven Springs to purchase the property.

5. Patsy Kole loaned money to Seven Springs for operating expenses.

6. Steingold makes a number of alternative arguments which the court finds unnecessary to consider.

ent fee simple deed of the eight holes parcel from Hodges Trust to Kennedy and Stockbridge actually created an equitable mortgage between Vidco as mortgagor and Kennedy and Stockbridge as mortgagee. This position maintains that Kennedy and Stockbridge effectively loaned the purchase price to Vidco. Of course, in a typical transaction Vidco would have taken title directly and conveyed a deed of trust to the benefit of Kennedy and Stockbridge as security for the loan. This transaction was structured as a direct sale so that Kennedy and Stockbridge could avoid the expense and delay of foreclosure if Vidco was unable to repay the loan. Thus, according to Steingold, the substance of the Hodges Trust conveyance was that Vidco became the true owner of the eight holes parcel and Kennedy and Stockbridge held only an equitable mortgage on the property. Kennedy and Stockbridge were therefore incapable of transferring more than the rights of their equitable mortgage interest to Seven Springs.

Steingold also asserts that the debtor, having a common ownership with Vidco, is the alter ego of Vidco. If the court accepts Steingold's equitable mortgage and alter ego theories, it follows that the court must treat Seven Springs' bankruptcy as an extension of the Vidco bankruptcy, and therefore the court should: (1) impose a constructive trust on the property on behalf of all creditors of Vidco; (2) allow Steingold to submit a proof of claim in the Seven Springs bankruptcy; and (3) declare the property subject to an equitable easement requiring its permanent usage as part of an eighteen hole golf course.[7]

### Discussion and Conclusions

Although Maurice Steingold has raised a number of issues in his counterclaim, all of his arguments urgently depend on this court finding that the apparent sale of the eight holes parcel from Hodges Trust to Kennedy and Stockbridge was actually an equitable mortgage from Vidco to Kennedy and Stockbridge. The determination of the various issues raised by Steingold's counterclaim must of course depend largely on Virginia real property law.

In Virginia there is a rebuttable presumption that a deed absolute on its face is presumed absolute unless the party challenging the presumption can prove by clear, unequivocal and convincing evidence that it is something other than what it appears to be. *Pretlow v. Hopkins*, 182 Va. 826, 30 S.E.2d 557 (1944); *Johnson v. Johnson*, 183 Va. 892, 33 S.E.2d 784 (1945); *Hunter v. Bane*, 153 Va. 165, 149 S.E. 467 (1929). Consequently, in this case Steingold has a rather heavy burden to prove Seven Springs does not hold fee simple title to the eight holes parcel.

An equitable mortgage is defined as a transaction which creates a security, irrespective of form or name. Thus, in the classic situation, an instrument which is in the form of a regular fee simple deed of real property, may actually be a mortgage between the parties and subject to the law of mortgages. Even though the instrument appears to convey fee simple title, the grantee actually only takes a mortgagee's interest, and when the grantor repays the underlying debt the grantee must reconvey the property to the grantor. *J.W. Pierson Co. v. Freeman*, 113 N.J.Eq. 268, 166 A. 121, 122 (1933).

Steingold's argument here presents a variation of the classic equitable mortgage. He argues that the purchase price paid by Kennedy and Stockbridge to Hodges Trust was actually a loan to Vidco which effectively enabled Vidco to purchase the realty. Thus, he urges the court to find that when Seven Springs took title from Kennedy and Stockbridge that title was still encumbered by Vidco's equitable rights to reacquire the property under mortgage law.

---

7. Steingold's position does not directly address what would be the necessary result of this court's finding the existence of an equitable mortgage, i.e., that Vidco as equitable mortgagor would have a mortgage indebtedness to Seven Springs as equitable mortgagee for the amount at least of the purchase price paid by Kennedy and Stockbridge. Since Vidco is a defunct chapter 7 debtor, it therefore seems that a finding of an equitable mortgage would be of little benefit to Steingold unless the court also accepts the alter ego argument.

■ The first and foremost factor to be considered in determining whether a conveyance is an equitable mortgage or a deed absolute is the existence of a borrower-lender relationship between the parties. A mortgage occurs when there is some debt between the grantor and the grantee which is secured by the conveyance transaction. *Hunter*, 149 S.E. at 468; *Magee v. Key*, 168 Va. 361, 191 S.E. 520 (1937); *Eggleston v. Eggleston*, 127 Va. 334, 103 S.E. 603 (1920). Thus there must be some debt owed by the mortgagor to the mortgagee at the time of the conveyance. *Tuggle v. Berkeley*, 101 Va. 83, 43 S.E. 199 (1903). Stated simply, the relationship between a buyer and a seller can be construed as the relationship of a mortgagor and mortgagee if the buyer is in fact transferring title to the seller as security for a debt. There is also an assumption in such transactions that the grantor (mortgagor) in the transaction intends to regain title to the property some time in the future. If the grantor does not intend to reacquire the property there is no mortgage. *Holladay v. Willis*, 101 Va. 274, 43 S.E. 616 (1903).

■ When a borrower-lender relationship between a grantor and grantee is established the court may then take into account circumstantial factors to determine whether or not the conveyance created an equitable mortgage. *Hunter*, 149 S.E. at 468–469. The circumstantial factors include: the continuing obligation of the grantor to pay the debt or meet the obligation which it is claimed the deed was made to secure; the relative values of what the grantor received as compared to what the grantee received in the transaction; the parties' contemporaneous and subsequent acts; the parties' declarations and admissions; the form of the written evidence of the transaction; the nature and character of the testimony relied upon; and the apparent aims and purposes of the conveyance. *See* Annotation, *Deed Absolute on its Face, with Contemporaneous Agreement or Option for Repurchase by Grantor, as Mortgage vel non*, 155 A.L.R 1104 (1945). This list of possible circumstances may be simplified to four basic factors: (1) intentions of the parties; (2) adequacy of consideration; (3) retention of possession by the grantor; and (4) satisfaction or survival of the debt. *See* 13A Mich.Juris., *Mortgages and Deeds of Trust* § 11 (1991).

■ Following the legal precepts set out above for equitable mortgages it is obvious here that the conveyance from Hodges Trust to Kennedy and Stockbridge could not have created a conventional equitable mortgage between these parties because there is no showing of any debt existing between the grantor, Hodges Trust, and the grantees, Kennedy and Stockbridge, to be secured by the eight holes parcel conveyed to Kennedy and Stockbridge. As between these parties there was a cash purchase.

However, as noted previously, Steingold's theory of the case does not stop here. He has attempted to prove the equitable mortgage was created between Vidco and Kennedy and Stockbridge, a variation on the classic equitable mortgage. This variation ignores that Vidco never owned the property and therefore is not a grantor in the transaction. Instead Steingold's argument relies on the perceived intent of the parties and would have the court substitute that intent for the traditional grantor-grantee relationship between Vidco and Kennedy and Stockbridge.

Steingold claims that if the transaction had been carried out in accordance with the parties intent, Kennedy and Stockbridge would have made a loan to Vidco by paying the purchase price to Hodges Trust, Vidco would have taken title to the property from Hodges Trust and conveyed a deed of trust to Kennedy and Stockbridge to secure Vidco's purchase. This, Steingold asserts, was the substance of the transaction.

Vidco may have intended to purchase the eight holes from the Hodges Trust and again later from Kennedy and Stockbridge, but the fact remains that Vidco never owned the eight holes. The court believes this fact is more than a mere technicality to be assumed away. However, even assuming arguendo that an equitable mortgage can be established without this fundamen-

tal grantor-grantee relationship, Steingold's evidence still fails.

At the very least, Steingold must demonstrate that Kennedy and Stockbridge knowingly participated in a security arrangement with Vidco. Yet virtually the only evidence presented to the court on this point is an agreement between Kennedy and an unrelated third party in which the Vidco purchase options for the eight holes parcel are listed as collateral and are included in a group of schedules referred to as loan documents. This hardly meets Steingold's burden of clear or convincing evidence of an equitable mortgage.

Steingold also claims Vidco's possession and control of the eight holes is an important factor. Vidco developed the property and was in possession of it during the period the property was owned by the Hodges Trust and then by Kennedy and Stockbridge. This situation continued until Steingold foreclosed on the ten holes parcel. However, control and possession of property as a circumstantial factor to be considered when determining whether an equitable mortgage exists presupposes a grantor-grantee relationship and to that extent may be useful in determining the intent of the parties. *Tuggle,* 43 S.E. at 202, *Johnson,* 33 S.E.2d at 789–790; *see also* Annotation, *Deed Absolute on its Face, with Contemporaneous Agreement or Option for Repurchase by Grantor, as Mortgage vel non,* 155 A.L.R 1104 (1945). However, because Vidco was never a grantor or grantee of this property this evidence has little probative value.

The final circumstantial factor Steingold asks the court to consider is the inadequacy of the price. Steingold claims the price Kennedy and Stockbridge paid for the eight holes parcel was the raw land value rather than its improved value. He claims that there was substantial difference in the two values and that the raw land price was inadequate. However, Steingold did not offer any evidence as to the value of the land before or after Vidco made improvements, its value at the time of the sale, its current value, or any relevant market conditions. Steingold merely asserts that Kennedy and Stockbridge sold the land to Seven Springs for more than they paid for it and concludes there was inadequate consideration. This is of little help to the court.

Steingold also asserts two alternative theories in addition to equitable mortgage: (1) due to Andrew Kole's fraudulent conduct, Vidco, Bedford Golf, and Seven Springs should be considered alter egos of one another, making Seven Springs liable for the debts of Vidco;[8] and (2) the eight holes parcel is subject to an equitable easement which prevents the debtor from using the property as anything but a golf course.[9] Steingold has also failed to pro-

---

**8.** Steingold places great weight on Andrew Kole's common ownership of Seven Springs and of Bedford Golf, the corporation that owned 100 percent of the Vidco stock at the time it filed bankruptcy. I agree that this circumstance in itself raises questions. However, there are limits to the obligation of an owner of a bankrupt corporation to continue the pursuit of a doomed business venture. It does not follow that Kole defrauded Vidco's creditors when he shifted his financing resources from Vidco's hopeless Las Gaviotas development to the more promising eight holes parcel.

Previously, in the Vidco bankruptcy an adversary proceeding was brought to equitably subordinate a claim secured by Vidco's real property. In the course of that litigation this court dealt with accusations that Kole and others engaged in what may best be described as shenanigans involving Vidco and others with whom it dealt. Even though the evidence in that litigation raised seriously suspicious circumstances, I found the evidence insufficient to support a finding that Kole and his associates committed fraud. *Vidco, Inc. v. Rochechi (In re Vidco, Inc.),* Case No. 89–00049–NT, Adv.Pro. No. 90–2112–T (E.D.Va.1990).

In the present case, there is virtually no evidence of fraud, certainly much less than was suggested in the earlier Vidco trial, and none sufficient to support Steingold's alter ego theory.

**9.** In Virginia an easement can arise by express grant, prescription, implication, estoppel, or necessity. *See* 6B Mich.Juris., *Easements* §§ 7–16 (Michie 1985). However, even easements by implication or estoppel require some evidence of actual or constructive representations made by the grantor of the property. *Walters v. Smith,* 186 Va. 159, 41 S.E.2d 617 (1947).

Steingold has produced no relevant evidence to establish the existence of any type of easement, and this theory can likewise be summarily dismissed.

duce sufficient evidence to support either of his alternative theories.

In summary, Steingold has failed to prove Seven Springs holds only an equitable mortgagee's interest and not fee simple title to the eight holes parcel of the golf course. Steingold has not proven the fundamental element of an equitable mortgage: a relationship between a grantor and grantee which exists because one has loaned money to the other and real estate has been used as security. However, even if the lack of this fundamental element were not fatal to Steingold's theory, in my view the scant circumstantial evidence presented does not satisfy Steingold's heavy burden of proving the existence of other necessary elements of an equitable mortgage.

Accordingly, the court must conclude that neither Vidco nor Steingold have any interest in the subject property and no standing as creditors in this bankruptcy case.

Debtor's counsel is directed to submit for entry by this court a sketch of an order consistent with this opinion, by which all matters remaining under the complaint may be resolved.