## Richmond

### TROWER, COMMITTEE V. SPADY AND OTHERS.

January 12, 1915.

Absent, Keith, P.

1. WILLS—*Construction—Case in Judgment—Provision for One Who Subsequently Becomes Insane—Acceptance by Committee.*—A testatrix, by a codicil to her will, directed that her daughter should be allowed to take at a specified price to be paid within six months after the probate of her will, a designated tract of land which, by her will, she had devised to certain of her grandchildren. The daughter was thereafter adjudged insane, her husband was appointed committee of her estate, and she was committed to a hospital for the insane. The testatrix lived four years thereafter, and, with full knowledge of the facts, made no change in her will. In the meantime, the land greatly increased in value. Within the time prescribed by the will, the committee of the daughter filed a bill asking to be allowed to accept the land for the daughter upon the terms mentioned in the will, and tendered the purchase price with his bill. The purchase price was advanced by the husband of the daughter, who was her committee, and who bound himself to subject neither the lunatic nor her estate to any charge for interest during her lifetime.

   *Held:* Infants and insane persons are the wards of the court, and it is the duty of the court to protect them, when it can be done, in their rights and interests, and hence the relief prayed by the committee should be granted. He should be allowed to accept for the lunatic the provision made for her by the will, and thus carry into effect the provisions of the will.

2. WILLS—*Construction—Intent—Change of Circumstances—No Change of Will.*—The wishes of a testatrix must be ascertained from the will. If a testatrix has failed to make any change in its provisions, notwithstanding a change of circumstances, then the courts must refuse to make any change. For the court to make change might flagrantly violate the wish and intent of the testatrix, and thus violate the cardinal rule that every competent person has the right to dispose of his property as he may choose.

Appeal from a decree of the Circuit Court of Northampton county. Decree for the defendants. Complainant appeals.

Reversed.

The opinion states the case.

*Otho F. Mears* and *C. V. Meredith,* for the appellant.

*Wescott & Turlington* and *Jeffries, Wolcott, Wolcott & Lankford,* for the appellees.

HARRISON, J., delivered the opinion of the court.

It appears that Henrietta S. Scherer, late of the county of Northampton, Virginia, departed this life in July, 1910, leaving a will, with codicil thereto, which was duly admitted to probate in the month of August following her death. The will is dated March 15, 1881, and the codicil which is declared to be a part thereof bears date September, 1895. In the body of the will she divides a certain farm owned by her in Northampton county between her two daughters, indicating the line of division so as to give each an equal number of acres. One of these tracts she gives in trust for life to her daughter, Henrietta Scherer, with power in her to appoint by will who shall take the same at her death. The other half of the farm is given in trust for life to her daughter, Margaret J. Spady, with power in her to appoint by will who shall take the same at her death. In each case it is provided that if no appointment is made the property shall pass to the children of the respective devisees.

The codicil, after declaring the desire of the testatrix to alter her will, provides, so far as necessary to be stated, as follows:

(1) "It is my desire, and I direct, that the devise in my said will of real estate to my daughter, Henrietta Scherer, now Henrietta Trower, shall remain and continue in force in all things, in manner and form as in the said will set forth."

(2) "Since making my said will, my daughter, Margaret J. Spady, has departed this life. It is now my desire and I direct that my daughter, Henrietta Trower, shall be permitted to take the whole of the real estate devised in the second clause of my said will in trust for my daughter, Margaret Spady, for life with remainder to her children, at the price of $5,000.00, to bear interest thereon from the date of my death, upon this condition, however, that within six months from the date of the probate of my said will and of this codicil, she shall out of the aforesaid sum of five thousand dollars first pay to my granddaughter, Bettie Scott, the wife of Clinton Scott, the sum of five hundred dollars with interest from the date of my death, and shall pay over the balance of the said sum of five thousand dollars, to-wit: the sum of $4,500.00 with interest from the date of my death, to the children of my daughter, Margaret Spady, deceased, who may be living at the time of my death, including the said Bettie Scott and to the issue of such as may be dead *per stirpes.*"

The codicil then proceeds to provide who shall have the privilege of taking such real estate at $5,000.00 in the event the daughter, Henrietta, should determine or elect not to take the same.

In 1906, about four years before the death of the testatrix, Henrietta Trower was, upon due and proper examination, adjudged to be insane and committed to the Eastern State Hospital at Williamsburg, Va. After the death of the testatrix, in 1910, and before the expiration of the six months in which Mrs. Trower could take the real estate in question at $5,000, this suit was brought by Robert S.

Trower, her committee, alleging the insanity of Henrietta Trower and her consequent inability to act for herself and take the land, as provided in the codicil, and praying that the court would act for her and on her behalf take the land, allowing her committee to pay the parties entitled thereto the sum stipulated in the codicil as the price she was to pay therefor; the committee being unable to act in the premises without the sanction of the court.

The husband of Mrs. Trower, who is her committee, alleges in his bill that she has five children and that her estate would be greatly benefited by an acceptance of the devise and the payment of the sum prescribed as the price of its acceptance. The complainant files with his bill a certificate of deposit made by him in bank of $5,300 to the credit of this cause, it being the principal due and one year's interest thereon, subject to the decree of the court, and alleges that if for any reason the sum so deposited is not sufficient for the purpose he will in his individual capacity deposit any further sum to the credit of the cause which the court may at any time request. Among others, the five children of Margaret Spady, deceased, were made parties defendant and filed a demurrer and answer to the bill.

Upon the hearing the court entered the decree appealed from, overruling the demurrer, and holding that the complainant should not, as committee of Henrietta Trower, be allowed to take for her the land in question and pay therefor the price of $5,000, as provided in the codicil to her mother's will. This conclusion was based upon the theory that the codicil did not give Mrs. Trower an estate in the land but merely an option, and that, therefore, the court had the right to take into consideration the greatly increased value of the estate and to deny her the right to exercise the option, although her estate would be greatly enhanced in value thereby.

This disregard of the clear declaration of so solemn an instrument as a will is not made for the benefit of a helpless ward of the court, or for her children, but for the benefit of strangers to her estate. There has been much discussion before us as to whether the provision in the codicil for Mrs. Trower is merely an option in her favor, or whether it created a vested estate in her, subject to be defeated by her failure to comply with the condition that she should pay $5,000 for the land, within the time prescribed. In the view we take of the case, it is wholly immaterial by what name you call the provision made for Mrs. Trower in this codicil. The language employed is too plain to admit of doubt. Mrs. Trower is to take the land mentioned, if she desires to do so, and pay $5,000 for it. This can only mean that the land is hers when she complies with the condition upon which it is given. By reason of her insanity she cannot act for herself, and the court is requested by her committee to act in her behalf and to allow him to comply with the condition and thereby perfect her right to the provision made for her.

As said by the learned counsel for the appellant, the question presented by the record is simply this: Whether a court in the interest of third parties, strangers to the estate of a lunatic, has the right to refuse to allow the committee of the lunatic to accept for her a devise, if there be attached to it a condition that the devisee must pay to such third person a certain sum, when the husband of the lunatic offers to pay such sum and to bind himself to subject neither the lunatic nor her estate to any charge for interest during her lifetime.

As already stated, the language of the will, so far as applicable to this controversy, is too clear for interpretation. It speaks the mind and purpose of the testatrix in as plain and unequivocal terms as can be employed, and the record furnishes no sufficient ground for disregarding this

plainly expressed intention of the testatrix in favor of her daughter, Mrs. Trower. The codicil was written for the sole purpose of taking the land in question from the appellees and giving Mrs. Trower the right to take it upon the terms and conditions therein set forth.

Much has been said as to what Mrs. Trower would do if she were not insane, and the opinion is advanced by the appellees that, in view of the great increase in the value of the land, she would not exercise the right given her in the codicil and thereby deprive her sister's children of an equal interest with her in their grandmother's estate. What Mrs. Trower would do if she were capable of acting for herself is the merest speculation. If it were permissible to determine what she would do by the course which experience shows is pursued by the average of mankind, we would say unhesitatingly that she would take all that she had a lawful right to; especially, in the light of the fact, appearing of record in the case of *Jarvis* v. *Spady,* recently before this court, which it is agreed shall be looked to in considering this appeal, that, notwithstanding her daughter's insanity, Mrs. Scherer, the testatrix always declared that she wished her will and codicil to stand, and manifested to the last the greatest devotion to this afflicted child.

It is conceded that the land in controversy is worth at the least $20,000, probably more: and the chief ground urged in support of the contention that Mrs. Trower must be deprived of her right to take the land is that it has thus increased in value; although the undeniable fact is that the codicil was written for the sole purpose of giving her that right.

We are aware of no rule which would justify a court in violating the plain purpose of a testatrix, as expressed in her will, because the property given to a devisee had increased in value after the will was made. The will must be considered independently of such events. No other rule

for the construction of a will would be safe. The wishes of the testatrix must be ascertained from the will. If a testatrix has failed to make any change in its provisions, notwithstanding a change of circumstances, then the courts must refuse to make any change. To do so might flagrantly violate the wish and intent of the testatrix and thus violate the cardinal rule that every competent person has the right to dispose of his or her property as he or she may choose.

It is contended on behalf of the appellees that the situation presented by this record is analogous to that involved in certain cases where an insane widow must elect whether she will take under or against her husband's will, the case chiefly relied on being that of *Vansteenwyck, &c.* v. *Washburn, &c.*, 59 Wis. 483, 17 N. W. 289; 48 Am. Rep. 532.

The cases referred to are not helpful in determining the question of power exercised by the lower court in the instant case. A marked distinction between the cases is at once apparent. In one the effort is to break the will, whereas in the other it is to uphold the will. The decisions in the cases mentioned are put upon the grounds, first, that the widow is amply and liberally provided for by the will, and, second, that by an election of dower the scheme of the will will be upset, although the widow might have known of the provisions and approved them. In the case cited, Governor Washburn disposed by will of an enormous estate, the amount of which does not fully appear from the opinion, but enough appears to show that the estate was a very large one. His wife had been hopelessly insane for many years prior to his death. The will provided for the insane wife in the following broad terms: "I direct my executors to bear constantly in mind the wants of my wife, and to set aside, use and expend whatever moneys may be necessary, consistently with her condition, to provide for her comfort and physical health; and I place no limit upon the sums which they may expend for the purposes indi-

cated." The executors filed the bill asking the court, among other things, whether Mrs. Washburn, the insane widow, must take under the will or against it? The court held that independently of statute, no one would question the power of a court of equity, when the application was in time, to elect for an insane widow, or other person incapable of personally making such election from want of capacity, and that the jurisdiction to do so was well established. It was pointed out that the widow in that case, by taking her dower rights would get six or seven hundred thousand dollars, but the court elected, on behalf of the widow, to take under the will, resting its conclusion upon the ground that the will amply and liberally provided for every want or desire that she might have or that money could gratify; and that to take against the will would defeat the intentions of the testator and interfere with the scheme of his will. The facts and circumstances of that case are entirely different from those found in the case before us, and can have no controlling influence in the disposition of the latter.

In the case at bar we are asked, under the circumstances to which we have adverted, not to allow the committee of Mrs. Trower to accept a devise to her which she is incapable of accepting 'for herself, and to thus violate and defeat the clear and explicit wishes of the testatrix as expressed in her will. Infants and insane persons are the wards of the court, and it is the duty of the court to protect them, when it can be done, in their rights and interests. The record before us discloses no ground for setting aside the will of this testatrix and making one for her, which is in effect what we are asked to do. As said in the *Washburn Case, supra,* the right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy. Everyone should have the same power to dispose by will, after his death,

in accordance with his own wishes, of whatever he may leave behind him in his own right, as he had in life to dispose of it by contract or gift; and it is as much the duty of the courts to uphold and enforce his will after death as to uphold and enforce his contracts made during life.

In conclusion we are of opinion that, under all of the facts and circumstances of this case, it was the duty of the court to have accepted the provision made for Mrs. Trower by her mother, in the codicil to her will, and that the tender by her committee of the sum necessary to complete and perfect her right to such provision should have been accepted by the court in discharge of the amount she was required to pay by the codicil for the land involved in this controversy.

The decree complained of must be reversed and annulled and the cause remanded for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*