# Richmond

VERNON L. JOHNSON v. VIRGINIA A. JOHNSON, ETC., ET ALS.

April 23, 1945.

Record No. 2895.

Present, All the Justices.

The opinion states the case.

*Stewart K. Powell* and *George L. Doughty*, for the appellant.

*B. T. Gunter, Jr.*, and *J. Brooks Mapp*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This is a proceeding to have a deed, absolute on its face, with contemporaneous agreement or option for re-purchase by grantors, declared to be a mortgage. From a decree in favor of the plaintiffs, the defendant, Vernon L. Johnson, appeals. The questions presented are purely legal, there being little or no conflict in the evidence.

On February 17, 1932, Sollie E. Johnson and Virginia A. Johnson, his wife, executed a deed of bargain and sale, absolute on its face, conveying three parcels of real estate situated in the town of Chincoteague, Virginia, to Vernon L. Johnson, in consideration of the recited sum of $15,000. On that same day, and contemporaneously therewith, the following agreement was made and executed between Sollie and his wife and Vernon and his wife:

"This Agreement made this 17th day of February, A. D., 1932, between Vernon L. Johnson and Rush E. Johnson, his wife, parties of the first part, and Sollie E. Johnson, party of the second part, all of the County of Accomack, State of Virginia.

"Witnesseth: That in consideration of certain conveyances this day made between Sollie E. Johnson and Vernon L. Johnson, the said Vernon L. Johnson, and Rush E. Johnson, his wife, agree to reconvey at any time within ten years from the date of this contract the real estate situate on Chincoteague Island, Virginia, this day conveyed to the said Vernon L. Johnson by Sollie E. Johnson and wife, upon the payment to the said Vernon L. Johnson of whatever sum or sums of money it has been necessary for the said Vernon L. Johnson to expend in and about the property, including any indebtedness of the said Sollie E. Johnson, paid by the said Vernon L. Johnson or which he is liable to pay.

"And it is further agreed that if within the ten years heretofore mentioned, the said Vernon L. Johnson and wife convey back to the said Sollie E. Johnson the property hereinbefore described, the said Vernon L. Johnson is to retain out of said conveyance one of the building lots in the rear

of the filling station, free of all costs and charges to the said Vernon L. Johnson.

"This contract is executed in duplicate.

"Witness the following signatures and seals:

Vernon L. Johnson (SEAL)
Sollie E. Johnson (SEAL)"

Sollie Johnson died intestate, November 21, 1936, leaving surviving him his widow, Virginia A. Johnson, and three children. Mrs. Johnson qualified as administratrix of his estate. Mrs. Johnson, in her own right, and as administratrix, and her three daughters instituted this proceeding against Vernon Johnson, the Bank of Chincoteague, Inc., and George L. Doughty, trustee, defendants, on February 13, 1942.

The bill of the plaintiffs, after setting out the deed of bargain and sale and contract of February 17, 1932, alleged that Vernon held title to one of the parcels of real estate described in the deed; the other two parcels having been sold and conveyed by a special commissioner on October 26, 1932, by virtue of proceedings in a chancery suit which had been instituted prior to February 17, 1932, and was still pending in the Circuit Court of Accomack County, the proceeds from the sale having been applied on indebtedness of Sollie which was secured by a deed of trust on his property at the time it was conveyed to Vernon; that on February 17, 1932, Vernon and his wife conveyed to trustees the three parcels of real estate which had on that day been conveyed to Vernon by Sollie, along with two other parcels of real estate owned by Vernon, in trust to secure the Bank of Chincoteague, Inc., certain bonds of Vernon amounting to $13,068.99 with interest; that there was a balance due on said deed of trust of $1200; that on September 26, 1941, plaintiffs, by their counsel, made a written request of Vernon for a itemized statement of the amount due by them to Vernon, pursuant to the terms of the agreement of February 17, 1932, in order that they might pay to him the amount

properly due him, and that he might, in turn, reconvey to them the specified real estate then standing in his name.

The bill further alleged, that after a lapse of considerable time, a "purported" itemized statement of the amount due Vernon was furnished by his counsel to the complainants, but that the statement did not correctly show the charges properly due by the estate of Sollie nor the credits to which that estate was entitled, and gave no credit for rents collected by Vernon from the real estate or credit for the use and occupation by Vernon of a portion of the property; that plaintiffs did not know and were unable to ascertain from Vernon, or from any other source, the amount necessary to redeem the real estate pursuant to their contract, but that as soon as a correct amount was furnished them they were ready, willing and anxious to pay that amount and have the real estate conveyed to them; and that unless plaintiffs were given credit for all rents collected by Vernon and with a fair and reasonable allowance for the use and occupation by Vernon of a portion of the property, they were unable and unwilling to redeem the real estate because such rents amounted to more than it was then worth.

The plaintiffs prayed for an accounting to determine the amount properly due in order to redeem; that Vernon be required to give full credit for all rents and profits of the real estate; that the property be decreed to be conveyed to the plaintiffs upon the payment of the amount found by the court to be properly due; that all liens against the real estate be ascertained in the order of their priority, and for general relief.

The Bank of Chincoteague, Inc., answering, asserted a balance of $1200 due on its lien indebtedness.

Vernon Johnson demurred to the bill on the grounds that it failed to show in its face that the plaintiffs were ready, able and willing to comply with the terms and provisions of the contract, and did not contain a statement of facts which would entitle them to a credit for the rents and profits of the real estate.

The Chancellor, the late John W. Nottingham, overruled the demurrer.

In this court it was further argued that the bill failed to specifically allege that the deed and agreement constituted a mortgage and showed that the plaintiffs made the exercise of the option in the agreement conditional upon the allowance of the rents claimed.

Vernon Johnson filed his answer, alleging that he had furnished a correct itemized statement to the plaintiffs, and denying that any of the rents collected by him should be credited against the expenditures made by him, or that he should be charged with any rent for his personal use and occupation of the property.

The trial court then referred the cause to a commissioner to ascertain and report the following matters:

"1. Whether or not all parties in interest are properly before the Court.

"2. The amount now properly due by complainants to the defendant, Vernon L. Johnson, in order to redeem the real estate, together with the buildings thereon described in the papers in this cause.

"3. The liens, including taxes against said real estate.

"4. All rents collected by said Vernon L. Johnson since February 17, 1932, from the real estate described in the papers in this cause, together with the parties from whom collected, and the dates and amounts of said collections.

"5. The rent, if any, due by said Vernon L. Johnson for any part of the real estate described in this cause occupied by him since February 17, 1932, together with a statement showing from what date said rent should draw interest.

"6. Whether or not the plaintiffs are entitled to be credited with all of the rents above referred to."

The following evidence was produced before the commissioner:

Early in 1932 Sollie E. Johnson found himself in straitened financial circumstances and unable to pay his debts. He owned three certain pieces or parcels of real estate situated in the town of Chincoteague, Virginia. This real estate was

encumbered by a deed of trust securing $12,000.00 and a mechanic's lien for $1100.00. In addition Sollie was largely indebted to his brother, Vernon, and to other creditors in various amounts. A suit was pending to subject his property to the mechanic's lien; default having been made in the payment of the $12,000 debt due the Bank of Chincoteague, Virginia, the bank requested the trustee in the deed of trust securing same to advertise and sell the property. The property was advertised to be sold at Chincoteague on February 17, 1932. When the trustee, on that day, arrived at that place for the purpose of making the sale he was advised that arrangements had been made to take care of the loan and to handle the property without exposing it to sale. On that same day, Sollie E. Johnson and wife conveyed the three parcels of land to Vernon and contemporaneously therewith the agreement hereinbefore set out was entered into.

There was due by Sollie Johnson to the Bank of Chincoteague on February 17, 1932, $12,000 and interest thereon of $1068.99, a total of $13,168.99. On that day, Vernon Johnson and his wife conveyed to trustees the three parcels of land which he secured from Sollie and two parcels of his own land, one located in Accomack county, Virginia, and the other in Maryland, to secure to the Bank of Chincoteague the sum of $13,168.99, the exact amount of Sollie's indebtedness to the bank. Later in 1932, there was credited on this indebtedness approximately $6500, proceeds from the sale of the two parcels of land in the suit of *Conant Bros. Company* v. *Sollie E. Johnson, et al.* At the date of the hearing, this debt had been reduced to the sum of $1200, through payments made by Vernon.

The cashier of the Bank of Chincoteague thought that $16,000 was the fair market value of the three parcels in 1932, and that in 1942, $13,000 was the fair value of the parcel held in the name of Vernon.

On October 26, 1932, in the suit of *Conant Bros. Company* v. *Sollie E. Johnson, et al.*, a proceeding to enforce the mechanic's lien against the land, a special commissioner of

the court conveyed to W. C. Bunting two of the tracts or parcels of land described in the deed of February 17, 1932, from Sollie to Vernon. Vernon was then left vested with the legal title to but one parcel of land. This is located on the main business street of Chincoteague, improved by a concrete building with three storerooms on the ground floor and two apartments above, and is the property involved in this suit.

On February 17, 1932, one of the above apartments was occupied by Sollie and his family and the other by Vernon and his family. Prior to that date Vernon paid rent to Sollie; after that date Sollie or his wife paid $10.00 per month to Vernon for one apartment. Prior to February 17, 1932, certain rents from the property had been assigned by Sollie to the Bank of Chincoteague, which collected them. This arrangement continued, with the consent of Vernon, for approximately six months after February 17, 1932. Otherwise the rents were collected by Vernon who paid for the necessary repairs, insurance, improvements and taxes on the property. This continued during the lifetime of Sollie and thereafter until the institution of this suit.

On September 26, 1941, Mrs. Virginia Johnson, cognizant of the agreement of February 17, 1932, between her husband and Vernon, a duplicate copy of which was found among her husband's papers, after his death, caused the following letter to be sent by her counsel to Vernon Johnson:

"Dear Mr. Johnson:

"Mrs. Sollie E. Johnson and her daughters have been to see me with reference to a Contract bearing date February 17, 1932, between you and Sollie E. Johnson. They asked me to write to you to find out what amount they would have to pay you to have the property conveyed to them in accordance with the terms of this Contract. I would appreciate an early reply.

Yours very truly,

(Signed) B. T. Gunter, Jr."

After some delay, Vernon, through his counsel, furnished Mrs. Johnson with a statement entitled "Expenditures and credits of Vernon L. Johnson with Sollie E. Johnson and/or his estate", showing a balance due him of $26,586.69. The statement charged interest upon all advances made by Vernon and failed to allow any credit for the rents and profits of the real estate. It also listed the payment of certain debts of Sollie which were included in other debits, that is, the charges were duplicates. Deeming this statement incorrect and failing to get a correct statement from Vernon, pursuant to the agreement of February 17, 1932, the plaintiffs instituted this proceeding.

Among the witnesses was W. D. Steelman, State oyster inspector of Chincoteague, who was not related to or connected with either of the parties. He said that shortly after February 17, 1932, Sollie Johnson told him that he had arranged with his brother, Vernon, to take over the property and carry it so as to save it for him, and that the rents therefrom "were to be used to pay the interest on the indebtedness and any over to go to helping pay the indebtedness on the property after interest and running expenses were kept up". Steelman said that about the time of the death of Sollie Johnson he was in the store of Vernon, and that Vernon, confirming the information given to him by Sollie with reference to the transaction of February 17, 1932, told him "that the rental now was taking care of the interest and paying some on the indebtedness and that he was trying to take it on until it was paid out and turn it over to him".

Vernon admitted in his testimony that he had included in his statement, furnished plaintiffs, several items, covering considerably more than a thousand dollars, which were improper, and that he had given no credit for rents received by him from the property or for his personal use and occupation of one of the stores and an apartment. The rental for the real estate for the years 1932 to 1941, inclusive, ranged from $1090.00 to $1740.00 per year, exclusive of any rent for the use and occupation by Vernon. The rents and

profits were thus much greater than the interest on Sollie's indebtedness plus the necessary costs of maintaining the property.

Vernon denied that he had ever had any conversation with Steelman about the conveyance of the property, but he did not deny the import of Steelman's statements, nor does he, in his pleadings or in his evidence, deny that Sollie conveyed his property to him as security for the debts mentioned. In his lengthy examination on the witness stand he merely identified the bill of sale and the contract of February 17, 1932. He did not assert that the transaction was intended otherwise than to secure the debts of Sollie, with the right of redemption upon repayment of amounts advanced by him for said debts. His principal contention was that he should not be held to account for rents collected or charged for his personal use and occupation of a part of the property.

The commissioner, in an itemized statement of the accounts between the parties, showed the total rents collected by Vernon amounted to $14,885.00, exclusive of any rent for the store room and the apartment occupied by Vernon. He fixed $1,125.00 as a fair charge against Vernon for the rent of the apartment from February 17, 1932, to November 1, 1939, and a charge of $1,850.00 for the occupancy of the store. This was based on rentals paid for similar property by other tenants, and the amounts are not in dispute. The commissioner allowed no interest on the last two charges against Vernon upon the ground that "the rent was not actually collected".

Sollie's estate was charged with $500.00, and credit given to Vernon in that amount, as the estimated value of the building lot which Vernon was to receive under the agreement of February 17, 1932, in the event of redemption of the property, that lot having been embraced in the property which was sold to Bunting in the mechanic's lien proceeding mentioned.

With the above credits allowed and improper charges

deducted, a balance was found to be due Vernon as of October 1, 1943, amounting to $8,031.56.

Plaintiffs excepted to the report because it charged them with interest on all advances made by Vernon and failed to charge Vernon with interest on the rents collected and due by him. The defendant excepted to the report on the grounds that it failed to give him credit for certain disbursements and expenditures and charged him with rents and profits as aforesaid.

On May 2, 1944, the present trial judge, the Honorable Jefferson F. Walter, overruled the exceptions of both parties; confirmed the report of the commissioner; decreed that plaintiffs were entitled to have the described real estate conveyed to them under the terms of the contract of February 17, 1932, upon the payment of the sum of $8,031.56 as of October 1, 1943, with provision for the credit and debits of interest, rent and other necessary expenses, including taxes, required to be expended from October 1, 1943, to the date of settlement. Special commissioners were appointed and directed to execute a deed to plaintiffs upon the payment of the ascertained sum.

The trial court did not err in overruling the demurrer.

The facts alleged in the bill sufficiently set out the contention that the deed and agreement constituted a mortgage. It is substance, not form, that controls. A willingness and readiness to perform according to the terms of the agreement was alleged by the plaintiffs. Credits for rents and profits of the real estate are clearly and distinctly claimed. Sufficient notice of the intention to redeem the property was given in the request for an accounting and in the institution of the suit. The assertion of an unwillingness to redeem in the event that claimed credits for rents and profits were not allowed was natural under the circumstances, and was justified by a correct interpretation of the terms of the agreement.

Defendant contends that the transaction of February 17, 1932, constituted a sale on condition that the grantor might

repurchase on certain terms, rather than a conveyance for the security of a debt, and that the terms of the condition were not strictly complied with.

Whether the transaction was a conditional sale or mortgage must be determined upon a consideration of the written instruments, read in the light of the circumstances which surrounded the contracting parties and their disclosed intentions, acts and conduct prior to, at the time of, and subsequent to the execution thereof.

Before discussing the evidence it may be well to advert to certain well settled principles.

In Virginia, and in most of the courts of this country, it is allowable "to prove *by parol* that a conveyance, absolute on its face, was in fact intended only as a security for money; that is, as a mortgage, with the inevitable concomitant of an equity of redemption". Minor's Institutes, Vol. 2 (4th Ed.) page 336.

It is essential to a mortgage that there be a debt to be secured and an equity of redemption. The character of the transaction is fixed by the intent of the parties at the time the transaction is entered into. The burden of proof normally rests upon the party who alleges that a deed, absolute on its face, is in fact a mortgage, and the evidence in support thereof must be clear, credible and convincing. *Snavely* v. *Pickle*, 29 Gratt. (70 Va.) 34; *Tuggle* v. *Berkeley*, 101 Va. 83, 43 S. E. 199; *Eggleston* v. *Eggleston*, 127 Va. 334, 103 S. E. 603; *Magee* v. *Key*, 168 Va. 361, 191 S. E. 520; *Pretlow* v. *Hopkins*, 182 Va. 826, 30 S. E. (2d) 557; Annotation L. R. A. 1916B, page 18 *et seq.*; 90 A. L. R., page 953 *et seq.*; 36 Am. Jur., Mortgages, Section 136 *et seq.*

Dean Ribble succinctly states the general rule in his admirable revision of Minor on Real Property (2d ed.) Vol. 1, Sec. 580, as follows:

"As a conditional sale has no equity of redemption incident to it, the attempt is not unfrequently made to give what is really in purpose and intent a mortgage, the aspect of a conditional sale; and as the terms in which they are

conceived are very similar, it is usually requisite to resort to *parol evidence*, extrinsic to the deed creating the estate, to determine the true character of the transaction. If, upon the whole investigation, it shall appear that a security for money was intended, it is a mortgage, whatever may be its terms; and it will be remembered that to a mortgage the right of redemption is *inseparably annexed*. And if, on the other hand, it shall, upon the whole, appear that it was a conditional sale, the performance of the condition punctually at the time can not be dispensed with. But doubtful cases are generally declared to be mortgages".

This was not a transaction between strangers. Sollie was financially distressed. His brother, Vernon, was one of his creditors for a fairly large sum. The tragic economic effects of the financial depression of 1932 were in full swing and the values of properties and securities had been reduced to pitiful levels. Sollie's creditors were pressing him and his properties were about to be exposed to public sale for the payment of his debts. His properties were yielding a sufficient sum to offer an opportunity for salvage if only an extension of time for payment could be gained. The income therefrom was sufficient to pay the interest on his debts and leave a sum for the reduction of the principal. Vernon was in a position to help his brother, and at the same time, perhaps, save something for himself. Under these circumstances the deed and the agreement were executed. Sollie did not receive a penny. The consideration was the exact amount of his debts paid by Vernon plus maintenance expenditures for the protection of the property.

Vernon took over the property. He secured a postponement of payment of the principal indebtedness by arranging a new deed of trust in which was included the property in question and some of his property as security. He thereafter paid the taxes, the necessary expenses for the upkeep and maintenance of the property, collected the rents and profits therefrom, paid the interest on the indebtedness and curtailed the principal amount from $13,168.99 to $1200, using there-

for the proceeds from a sale of a part of the property, and, in the beginning, at least, some of the rents therefrom.

The presumption arising where the grantee is in possession that the deed constitutes a sale is a mere presumption and may be repelled by circumstances sufficient to satisfy the mind that a mortgage was intended. *Snavely* v. *Pickle*, *supra*. The payment of rent by Sollie was good business for both parties. It was no hardship to Sollie as he had to live in some house, and the more he paid in rent for this particular property, the smaller the amount required for its redemption.

Vernon rendered no statement to his brother, and none was requested. Finally, after the death of Sollie, his heirs requested a statement for the purpose of redemption and were furnished one, which was admittedly incorrect. This statement contained duplicate debit items, it charged interest on payments made by Vernon from the date of payment, and it allowed no credit for rents and profits. It did not deny the right of redemption.

The agreement of February 17, 1932, for reconveyance of the property, made no specific reference either to payment of interest or credit for rents and profits. It was manifestly intended to save Vernon from loss in the event of redemption, and in the event thereof to reward him for saving the property for Sollie by the gift of a lot from the property conveyed. It is significant, we think, that Vernon at no time denied that the deed was executed as security for the payments made by him. It is also significant that Vernon does not in the agreement assume liability for all of Sollie's debts but required repayment only for expenditures made by him or for those for which he became liable by his own act. Added to all of this is the positive evidence of Steelman that Vernon admitted that he had taken over the property and was using the rentals therefrom to take care of the interest and reduce the indebtedness thereon, to save it for Sollie. This is an admission in accord with the circumstances.

A further compelling circumstance for equitable relief is

the fact that if Vernon be not required to account for rents and profits he would, upon the redemption of the property, be entitled to receive from the transaction his principal and interest in full, plus approximately $18,000 in rents and profits, plus $500, the value of the building lot given him as a reward for his financial assistance, and appellees would be required to pay more than $26,000 for property worth about $13,000. If this be true, the agreement for a reconveyance had little meaning, for it deprived an insolvent, who delayed redemption, of both opportunity and good cause for redemption.

If the contention of the plaintiffs is correct, Vernon will receive his interest and principal in full, plus $500. No rights of creditors and subsequent parties have intervened and Vernon will not suffer the loss of a penny.

A mortgagee is not entitled to interest both of the debt and the rent and profits from the security for the debt. In this case it would be unconscionable to make such a double allowance. The rate of interest would exceed 12%. Without the explanatory evidence to the contrary, it is difficult to believe that Sollie, entertaining the thought of redemption which he caused the agreement to provide for, ever intended his brother to receive the extortionate compensation claimed.

The facts and circumstances clearly and satisfactorily show that the deed, notwithstanding its form, was intended only as a mortgage to secure the debts of the grantor and expenditures of the grantee, and that the plaintiffs were entitled to a reconveyance of the property upon reimbursement of the trustee for all liabilities and expenditures made accordingly by the latter for which he was not otherwise repaid. Within the required time an accounting was requested and a demand was made for reconveyance. No repayment could be made until there had been a correct accounting.

A mortgagor, according to all of the authorities, is entitled to have the rents and profits collected by the mortgagee credited upon the indebtedness secured by the mortgage. Therefore, the trial court properly held that the

plaintiffs were entitled to credits for the rents and profits, including a reasonable charge against Vernon for his use and possession of a portion of the property. *Snavely* v. *Pickle, supra.*

The trial court, confirming the report of the commissioner, charged plaintiffs with interest on all expenditures made by Vernon from the day on which they were made and failed to charge Vernon with interest on the rents charged him for his personal use and possession of the storeroom and the apartment. This was error, we think. Vernon had the benefit of the money, which he should have paid for such rents; that money should have been used for the reduction of the debts of Sollie. To the extent of such reduction the debts and interest against Sollie would have been reduced.

An obligation to pay interest, when not expressly waived, is implied and begins when the debt is due and payable. *Parsons* v. *Parsons*, 167 Va. 374, 189 S. E. 448. By statute, Virginia Code, 1942, Sec. 5519, it is provided: "In any action for rent, or for such use and occupation, interest shall be allowed as on other contracts".

We are, therefore, of opinion that the decree of the trial court should be amended to charge Vernon with interest on the rent found by the commissioner to be due from him for the use and occupation of both the apartment and storeroom from February 17, 1932, to November 1, 1939, the interest to be charged from the last day of each calendar year on the rent due for that year. In all other respects the decree of the trial court is affirmed, and this cause is remanded to the trial court for such further orders and decrees as may be necessary to carry out the views expressed in this opinion.

*Amended, and as amended,*
*affirmed and remanded.*