## Staunton

JOHN SCOTT CARTER, ET AL., ETC. v. WILLIS SCOTT CARTER, INDIVID-
UALLY AND AS ADMINISTRATRIX, ETC.

September 8, 1961.

Record No. 5277.

Present, All the Justices.

The opinion states the case.

*Robert L. Marshall,* for the appellants.

*Samuel H. Williams* (*Williams, Robertson & Sackett,* on brief),
for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Indemnity Insurance Company of North America, hereinafter referred to as the insurer, initiated this proceeding by filing a bill of interpleader praying the lower court to determine to whom and in what proportion the proceeds of an accident insurance policy issued by it covering John S. Carter, in the event of his accidental death, should be paid. It alleged that Carter died in the crash of an airplane on October 30, 1959; that he left surviving him Willis Scott Carter, his widow, who qualified as administratrix of his estate, Aurelia I. Carter, his mother, and John Scott Carter and Francis C. Carter, respectively 17 and 7 years of age, his only children. Each of the above named survivors was made a party defendant to the bill, the widow in her own right and as administratrix of the estate of her late husband. A guardian *ad litem* was appointed for the infants, answers were filed on behalf of each of the defendants, and the cause duly matured.

The facts, set out in the pleadings, in the depositions of witnesses, and by the exhibits, are not in dispute.

John S. Carter was the manager of the plant of American Cyanamid Company at Piney River, Virginia, where he had been employed by that company since 1938. At the time of his death, he was returning in an airplane to his home in Virginia from New York City, where he had gone on business for his company.

In 1949, American Cyanamid Company, sometimes hereinafter referred to as the employer, inaugurated a system of employee insurance, and purchased from the Prudential Insurance Company of America a policy of Group Insurance providing death, hospital and other benefits. On February 1, 1949, there was issued to John S. Carter a certificate of coverage under this policy, with death benefits amounting to $14,000.00, payable to his wife as beneficiary. On January 1, 1950, November 1, 1951, and September 1, 1953, certificates were issued to Carter showing an increase of benefits upon each of the said dates. On January 1, 1957, he was furnished a certificate showing that the amount payable as death benefits had increased to $26,000.00.

Under the terms of that policy, decedent had the right, without the consent of the beneficiary, to change the beneficiary by giving a written notice to his employer on a form provided by the insurer. Accordingly, on January 12, 1951, at the request of decedent, a rider was issued by the insurer containing the provision that, upon the

death of the insured, the sum of $2,000.00 should be paid to his mother, Aurelia I. Carter, and the remaining portion to his son, John Scott Carter.

On June 4, 1954, after the birth of his second son, decedent made a further change in his beneficiaries by making the following designation:

"(a) $2,000, or the proceeds if less, to Aurelia I. Carter, Beneficiary, mother of the Insured, if living, otherwise to such of John S. Carter and Francis C. Carter, sons of the Insured, as may be living, Beneficiaries, in equal shares or to the survivor of them, if any, otherwise to the executors or administrators of the Insured; and

"(b) The remaining portion, if any, of the proceeds to such of said sons as may be living, in equal shares or to the survivor of them, if any, otherwise to the executors or administrators of the Insured."

In 1950, American Cyanamid Company purchased additional insurance for the benefit of its employees by taking out a policy with the Indemnity Insurance Company of North America, known as a Blanket Accident Policy. This policy provided coverage for its employees, including the decedent, in the event of death, as a result of an accident while engaged in travel on the business of the company. The employer company issued a memorandum dated April 11, 1955, found in the files of the decedent after his death, addressed to "Division of Department Executives, Plant and Office Managers, All Holders of Air Travel Cards—Subject: Travel Insurance for Employees," superseding a memorandum of June 5, 1951. In the memorandum, it was stated that the additional coverage was "intended as a complement to its other group insurance for employees." It set out a schedule showing death benefits based on the rate of employee's regular fixed compensation in the form of salary or wages. It stated that "Indemnity for loss of life of the insured employee is payable to the beneficiary designated by the insured employee under the Company's Employees Group Insurance Plan, or in the event no beneficiary has been designated thereunder, payment shall be made to the estate of the insured employee."

A clause of the Blanket Accident Policy, in force at decedent's death, contained an almost identical provision setting out that in the event of accidental death, indemnity is "payable to the Beneficiary, or Beneficiaries in the proportions designated by such Insured Employee under the Group Life Policy carried by the Employer, if any, otherwise, as on file with the employer, if no beneficiary designated, then to the estate of such Insured Employee."

In 1950, when the Blanket Accident Policy was issued, coverage of the decedent amounted to $28,000.00. Carter had a coverage of $40,000.00 at his salary scale according to the memorandum of April 11, 1955. The coverage increased to $52,000.00 in 1956; to $118,000.00 in 1958; and in 1959 amounted to $126,000.00.

Decedent's salary at the date of his death was $15,000.00 per year. The evidence does not show that Carter received any formal notice of the precise amount of the increased benefits arising from increases in his salary, except by the memorandum of April 11, 1955, which disclosed that his coverage was $40,000.00 at the time of its issue.

Both the 1955 memorandum and the superseded memorandum of June 5, 1951, likewise addressed to the executives of the several divisions of the company, plant and office managers, set out the benefits of the Blanket Accident Policy and suggested that all employees be made acquainted with their contents. In June, 1951, decedent was the personnel manager of the plant of the American Cyanamid Company.

The trial court held that since it appeared from the evidence decedent knew that his coverage under the Blanket Accident Policy amounted to $40,000.00, when he designated his mother and his sons as beneficiaries under the Group Policy, and was thereafter unaware of any increased coverage, and made no designation as to the payment thereof, he effectively designated the distribution of $40,000.00 only, that is, $2,000.00 to his mother and $19,000.00 to each of his sons, and died intestate as to the balance of the amount payable under the policy, that is, $86,000.00.

The court thereupon decreed that the Indemnity Insurance Company of North America, after the payment of a fee of $100.00 to the guardian *ad litem* of the infant defendants, and a fee of $200.00 to their counsel for services rendered in this proceeding, pay to Aurelia I. Carter the sum of $2,000.00; to the First National Trust and Savings Bank of Lynchburg, Virginia, guardian of John Scott Carter the sum of $19,000.00, and as guardian of Francis C. Carter a like sum of $19,000.00, the beneficiaries designated under the Group Policy and by reference designated beneficiaries to the extent of $40,000.00 under the Blanket Accident Policy; and pay the balance of the fund amounting to $85,700.00 to Willis Scott Carter, administratrix of the estate of John S. Carter, deceased.

The court further decreed that because of the objection and exception of the guardian *ad litem* of the infant defendants to the payment of the said sum of $85,700.00 to the estate of the decedent, instead of

to the two infant defendants, the said sum should be paid to the clerk of the trial court and deposited in the First National Trust and Savings Bank of Lynchburg, Virginia, on savings account, subject to the further order of the court.

The deposit has accordingly been made, and we are concerned here only with its distribution to the beneficiary or beneficiaries entitled to it. No exception has been made to any other distribution under the decree.

Willis Scott Carter, widow of the decedent, contends that it is inconceivable that her husband intended her to be excluded from the benefits of the Blanket Accident Policy, in view of their mutual love, respect and cooperation. She argues that his designation of beneficiaries, as applied to the above policy, should be corrected and reformed on the ground that he did not appreciate the full import of his employer's memorandum of 1955, and was unaware of the amount of the indemnity provided.

The provision of the Blanket Accident Policy relating to the designation of a beneficiary or beneficiaries thereunder is clear, simple, direct and free from ambiguity. It specifically provides that indemnity shall be payable to the beneficiary or beneficiaries in the proportion designated by the insured employee under the Group Policy procured by the employer. It is conceded that decedent effectively designated his mother and his two sons to receive all of the proceeds payable under the Group Policy.

There is no evidence of mistake of fact, unilaterally or mutually, and there is no charge of fraud or misrepresentation. The question before us is not what is best for decedent's wife or family, or what decedent may have wished to do in consideration of all circumstances; but whom did he designate as his beneficiary or beneficiaries of the indemnity provided in the Blanket Accident Policy.

The terms, provisions and conditions of a life insurance policy are to be considered the same as in other contracts, subject only to the provisions of law affecting insurance contracts. The courts have neither the duty nor the power to make the contracts. It is only their function to construe them. The intention of the parties must be determined from what they actually say and not from what it may be supposed they intended to say. Where the meaning of the language used is clear, a contract needs no interpretation. It speaks for itself. We are bound to adhere to it as the authentic expression of the intention of the parties. *Darden* v. *North American Benefit Association,*

170 Va. 479, 482, 197 S. E. 413; *Atlantic Life Insurance Company* v. *Worley*, 161 Va. 951, 960, 172 S. E. 168; *Indemnity Insurance Company* v. *Jordan*, 158 Va. 834, 841, 164 S. E. 539; 12 Am. Jur., Insurance, § 245, page 627; 44 C. J. S., Insurance, § 289, page 1136.

John Shadrach Carter occupied a responsible business position, and had had considerable experience in obtaining life insurance and in designating his beneficiaries.[1] In the Group Policy, he originally designated his wife as beneficiary. In 1951, after he received notice from the Prudential Insurance Company that his coverage under the policy had increased to $16,000.00, he changed the designation from his wife to his mother and son, John Scott Carter. On June 4, 1954, after the birth of his second son, and with knowledge of the increased coverage to $22,000.00, he designated as his beneficiaries his two sons and his mother, omitting his wife. On January 1, 1957, he was furnished a certificate showing an increase to $26,000.00; but he still did not designate his wife as one of his beneficiaries.

It is not consistent with decedent's character as an experienced businessman, and his familiarity with insurance contracts to believe that he did not know what he was doing, in 1954, when he designated his mother and his sons as the only beneficiaries of the Group Policy, or that he did not know that the same designation applied to the Blanket Accident Policy.

We do not know why decedent did not include his wife or his estate as a beneficiary in the two policies along with those named by him. He plainly indicated that he did not desire his wife to share in the Group Policy, when he changed the beneficiaries therein. Whatever reason he then may have had, may have been the same reason

---

[1] It appears from the record that decedent, prior to his marriage, purchased a policy of life insurance for $1,000.00, and immediately following his marriage named his wife as beneficiary therein; that following the birth of their son, John, he took out an insurance policy of $5,000.00 on his life, designed to provide funds for the education of his son, and also purchased an endowment policy on the life of his son. Upon the birth of his second son, he purchased an endowment policy on the life of that son to provide him with funds for an education. In 1958, decedent cashed the endowment policy taken out for his second son, in order to use the proceeds to acquire a house.

When decedent left his home on October 26, 1959, by airplane for New York, he purchased a policy of insurance on his life in the amount of $25,000.00, naming his wife as beneficiary. When he left New York by airplane to return home on October 30, 1959, he purchased a similar policy in the amount of $25,000.00, designating his wife as beneficiary.

The proceeds from these additionally mentioned policies are not in controversy here; but their purchase by decedent is cited to show his interest in his family and his experience in obtaining life insurance coverage.

which impelled him not to include her as a beneficiary under the Blanket Accident Policy. What he desired to do must be ascertained from what he declared.

The only authentic expression of his intention is the designation that he made in the Group Policy, a designation which specifically became a part of the Blanket Accident Policy. He named his mother to receive a specified portion of the indemnity payable and then named his sons to receive "the remaining portion" in equal shares, without any limitation or restriction whatever on the amount thereof. It was only in the event that his mother and his sons failed to survive him that the proceeds were to go to the executors or administrators of his estate. We have no right to usurp his right to name his beneficiaries.

We have been cited to no insurance case in Virginia, nor have we found one, which deals with the precise question presented here. However, in several will cases involving the construction of devises or bequests where the property involved increased in value between the time of the execution of the will and the death of the testator, we have held that the devises or bequests were to be considered independently of such increase. We said, and we here repeat, that where a testator fails to make provisions in his will dependent upon circumstances, either foreseen or unforeseen, then the courts should refuse to make such provisions for him; and that it is our duty to follow the intention of the person signing an instrument as shown by the language used and not to reform or correct the same because of unforeseen conditions arising after its execution. *Trower* v. *Spady*, 117 Va. 173, 178, 83 S. E. 1049; *Hurt* v. *Hurt*, 121 Va. 413, 423, 93 S. E. 672. Cf. *Rule* v. *First National Bank*, 182 Va. 227, 28 S. E. 2d 709.

It is immaterial whether or not decedent was aware of the full amount of his increased coverage under the Blanket Accident Policy. He disposed of the entire amount, whatever it might be, by designating his mother to receive "$2,000, or the proceeds if less," and his sons, "or to the survivor of them, if any, otherwise to the executors or administrators" of his estate, "the remaining portion." It would be difficult to employ language making a more positive and effective disposition of the entire proceeds of the policy, and the portions thereof which his designated beneficiaries should receive.

For the foregoing reasons, we are of opinion that the decree of the trial court, insofar as it directed the payment of the sum of $85,700.00 to Willis Scott Carter, administratrix of the estate of the decedent, is erroneous and should be reversed. We will, therefore, here enter a final decree ordering that, out of the sum of $85,700.00 on deposit on

savings account in the First National Trust and Savings Bank of Lynchburg, Virginia, there be paid a fee of $2,000.00 to Robert L. Marshall, counsel and guardian *ad litem* for the infant defendants upon this appeal, and that the balance of $83,700.00, and interest thereon, be paid to the First National Trust and Savings Bank of Lynchburg, Virginia, guardian of John Scott Carter and Francis C. Carter, the infants to share equally in said balance.

*Reversed and final decree.*