## CIRCUIT COURT OF THE CITY OF NORFOLK

Carl L. Baum

v.

Whitehorse Marine, Inc.

December 26, 1996

Case No. (Law) L95-3647

BY JUDGE MARC JACOBSON

Defendant Whitehorse Marine, Inc. (Defendant) has filed a Motion to Dismiss the instant action filed by Carl L. Baum (Plaintiff) under the Jones Act, 46 U.S.C. § 688, *et seq.,* for a claim of personal injuries, pain and suffering, and medical expenses and a second claim for maintenance and cure. Plaintiff alleges he suffered personal injuries on January 15, 1993, while working in the course and scope of his employment as a seaman aboard the vessel *Tiffany B.* Defendant's Motion to Dismiss claims that the Plaintiff executed a Release in Full (Release) in an earlier suit discharging not only the three named tortfeasors of that suit but also "all other persons, firms, or corporations from all claims ..." arising from the accident. The Release, Defendant claims, prevents Plaintiff from proceeding with the instant suit.

Plaintiff filed the original suit which resulted in the Release against the hereinafter named three defendants for personal injuries received when a set of steps collapsed. The steps were located on property leased by the Defendant in the instant case, but the named defendants were Arnette Properties, Inc., Rea

Construction Co., and the City of Norfolk. The original suit was settled and as part of the settlement Plaintiff signed the Release dated July 28, 1994, which was witnessed by an attorney, releasing and forever discharging not only the named joint tortfeasors but also:

> all other persons, firms, or corporations from all claims, demands, damages, actions, or causes of action on account of damage to property, bodily injuries, or death, resulting, or to result, from an accident to my person which occurred on or about the fifteenth day of January, 1993, by reason of an accident in Norfolk, Va, and of and for all claims or demands whatsoever in law or in equity, which I … my … heirs, executors, administrators, or assigns can, shall or may have by reason of any matter, cause, or thing whatsoever prior to the date hereof.

On August 3, 1994, Plaintiff executed and acknowledged a Settlement Memorandum authorizing his attorney to pay designated medical and case expenses from the settlement proceeds and tender the balance ($36,103.61) to the Plaintiff. The Settlement Memorandum contains the following language:

> I further acknowledge that I may still have a Jones Act or Workers' Compensation claim against Whitehorse Marine, Inc. Any such Workers' Compensation claim will expire at the latest on January 15, 1995. I have been urged to *immediately* seek counsel if I wish to pursue such claims and acknowledge that such claims may entitle me to future medical payments.

On November 7, 1995, the Plaintiff filed the instant action as an American seaman under authority of the Jones Act for personal injuries, pain and suffering, and medical expenses in Count I and for maintenance and cure in Count II. Defendant has moved to dismiss, claiming the Plaintiff is bound by the Release. Plaintiff claims that he did not intend to release Defendant, as evidenced by his acknowledgment in the Settlement Memorandum.

Virginia has abrogated the common law rule that the release of one joint tortfeasor releases all joint tortfeasors. Va. Code Ann. § 8.01-35.1 (Michie 1992); *see Hayman v. Patio Products, Inc.*, 226 Va. 482, 486-87, 311 S.E.2d 752, 755 (1984). One reason for abrogating the common law rule was that it worked harsh results. Under the common law rule, even if the terms of an agreement releasing one joint tortfeasor specifically preserved the right to sue other tortfeasors, that reservation was unenforceable. *Wright v. Orlowski*, 218

Va. 115, 120, 235 S.E.2d 349, 352 (1977). Under the current statute, the release of one joint tortfeasor does not *necessarily* release all other tortfeasors, unless the terms of the release so provide. § 8.01-35.1(A)(1). The statute allows parties to preserve the common law rule by employing specific language in the release. *See State Farm Mut. Auto. Ins. Co. v. Reynolds*, 676 F. Supp. 106 (W.D. Va. 1987).

In the instant case, the specific terms of the Release release and forever discharge not only the three named parties, but also "all other persons, firms, or corporations." The terms and language of the Release clearly indicate that the intention of the parties to the Release was to release all tortfeasors, named and unnamed, from further liability regarding the collapse of the stairs. Plaintiff, however, claims that he did not intend to release Defendant, as evidenced by the Settlement Memorandum and as alleged in the testimony of the Plaintiff and argued by his counsel in the first suit. This evidence of subjective intent presents two basic issues. First, is it barred under the parol evidence rule? Second, is it otherwise relevant?

The parol evidence rule is not a bar to the admissibility of the Plaintiff's subjective intent. Normally, the parol evidence rule makes a written instrument conclusive proof of what the parties intended and cannot be contradicted or explained by extrinsic evidence. *Goodwin v. Kerns*, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941). The well established law in Virginia, however, clearly provides that the parol evidence rule does not apply "in a suit involving strangers to the writing nor in a suit involving one party to the writing and a stranger thereto." *McComb v. McComb*, 226 Va. 271, 275, 307 S.E.2d 877, 879 (1983) (citing and quoting a long line of Virginia precedent dating back to 1891). Thus the parol evidence rule is not a bar to admitting the evidence of subjective intent. However, this does not end the Court's inquiry.

The Plaintiff cites the case of *Lemke v. Sears, Roebuck & Co.*, 853 F.2d 253 (4th Cir. 1988), as being on "all fours" with the instant case. The *Lemke* case only applied the rule of *McComb* to releases. In *Lemke*, a release was executed to settle a personal injury suit arising from a lawnmower accident. The release was prepared by State Farm, the homeowner's insurance carrier, and signed by the plaintiff, Karen Lemke. The release contained language identical to the release in this suit, which discharged all other persons, firms, or corporations. Lemke then brought a products liability action against the seller and manufacturer of the lawnmower, who then sought to enforce the release against her. The trial court granted summary judgment for the defendants. The Fourth Circuit, interpreting Virginia law concerning the parol evidence rule (particularly *McComb*), held that it was error for the trial court to base summary judgment on the four corners of the document. The court then

remanded the case, holding "whether Roper and Sears were, in fact, discharged from liability is a question that can be answered only after considering all *relevant evidence* on the actual intent of the parties to the release." *Id.* at 255 (emphasis added). While *Lemke* deserves consideration, it is necessary to inquire as to "what evidence is 'relevant'."

The Plaintiff in this case wishes to have this Court consider any and all evidence of his intent, including the testimony of his attorney at the time of execution of the Release. In support of his request, the Plaintiff has provided the Court with a copy of a letter opinion issued by the Richmond Circuit Court. (Pl.'s Mem. Opp'n Mot. Dismiss Ex. 3.) The case, styled *Ray v. Jacobs*, involved facts similar to the instant case and, indeed, referred to the *Lemke* case as authority for denying defendant's motion for summary judgment. *Lemke* merely established that the parol evidence rule does not bar the admission of "relevant" evidence. But the Plaintiff must still provide relevant evidence of intent before establishing a question of fact. Further to be considered is the authority or effect of Code section 8.01-35.1 and whether refusal to hold the Plaintiff bound to the Release would be contrary to or thwart the force of the statute. In essence, the Court must consider if the issue before the Court in the instant action is an issue of law and not fact.

The Court concludes that the proffered evidence in this case is not relevant for three reasons. First, the intent of the parties to a contract must be discerned by examining the words they have chosen to express that intent. The words used in the Release in Full clearly and unambiguously release the entire world from any further liability. The well established law in Virginia requires this Court to give effect to the clear and unambiguous wording of the Release. A court must conclude that the parties intended what their written instrument plainly declares. *Lenders Fin. Corp. v. Talton*, 249 Va. 182, 455 S.E.2d 232 (1995). When construing contracts, the guiding principle that courts should follow is the intention of the parties as expressed in the words they have chosen. *W. D. Nelson & Co. v. Taylor Heights Dev. Corp.*, 207 Va. 386, 150 S.E.2d 142 (1966). The intent of the parties to a contract must be determined from what they actually say and not from what may be supposed they intended to say. *Carter v. Carter*, 202 Va. 892, 121 S.E.2d 482 (1961).

Virginia adheres to the plain meaning rule of contract interpretation. *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). Under this rule, "the language used is to be taken in its ordinary signification .... If, when so read, the meaning is plain, the instrument must be given effect accordingly." *Virginian Ry. v. Avis*, 124 Va. 711, 716, 98 S.E. 638, 639 (1919). Courts are not at liberty to rewrite instruments to express an intention that is otherwise indiscernible. *See Walker v. Bowman*, 227 Va. 209, 315 S.E.2d 206 (1984).

Indeed, when a provision is too plain to be misunderstood, there is nothing to construe. *Kennard v. Travelers' Protective Ass'n*, 157 Va. 153, 160 S.E. 38 (1931). The wording contained in the Release is clear. Even in *Lemke*, the Fourth Circuit acknowledged that "the effect of the release itself is controlled by the intent of the parties *as expressed in the terms of the writing*. The judicial inquiry in cases involving disputed releases, therefore, follows a path of contract interpretation." *Lemke*, 853 F.2d at 255 (emphasis added). The intent that is relevant, therefore, is the intent expressed in the release and the manifest intent of the Release in the instant case, as evidenced by the language in the Release, was to discharge all other persons from further liability to the Plaintiff.

Second, the only relevant intent is that which the parties manifest at the time they signed the contract. In this case, the proffered evidence is of an intent subsequent to the date of the Release. Under the fundamental rules of construction, a contract "must be construed with reference to the intent of the parties when it was made, irrespective of events afterwards occurring." *Davison v. Von Lingen*, 113 U.S. 40, 50 (1884); *see Treakle v. Pocahontas S.S. Co.*, 273 F. Supp. 608 (E.D. Va. 1967) *aff'd*, 406 F.2d 412 (4th Cir. 1969) (holding surrounding circumstances at time contract was made proper to determine intent of parties); *In re Concrete Structures, Inc.*, 23 B.R. 605 (E.D. Va. 1982) (holding court must give effect to parties' intentions as they existed at the time they entered into the contract); *cf. Johnson v. Johnson*, 183 Va. 892, 33 S.E.2d 784 (1945) (holding character of a transaction is fixed by the intent of the parties at the time the transaction is entered into).

Moreover, the intent must be outwardly manifest at the time of the contracting, because a party's subjective intent, undisclosed at the time of contracting, can never form the basis of a contract. *Lucy v. Zehmer*, 196 Va. 493, 84 S.E.2d 516 (1954). The law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. *First Nat'l Exch. Bank v. Roanoke Oil Co.*, 169 Va. 99, 192 S.E. 764 (1937). Thus, the only relevant intent in this case is the intent manifest at the time the release was executed. The Plaintiff's proffered evidence in this case is a settlement memorandum prepared six days after the release was signed. This evidence of a subsequent, subjective intent is irrelevant and would appear to be contrary to the policy adopted by the General Assembly and enacted into § 8.01-35.1.

Third, the Code of Virginia imposes a legal significance to a release in full that is independent of the subjective intent of the parties. Section 8.01-35.1(A)(1) requires parties wishing to discharge all tortfeasors to do so with express language. The Release in this case conforms with the requirements of this rule. Further, § 8.01-35.1(B) imputes an independent legal significance to

releases when parties use this language. *See Shiflet v. Eller*, 228 Va. 115, 319 S.E.2d 750 (1984) (holding Code § 8.01-35.1 affects the substantive rights of joint tortfeasors). Subsection (B) provides that a settling tortfeasor is not entitled to recover for contribution from a tortfeasor that is not made a party to the release. Consequently, a settling tortfeasor, by making the release apply to all tortfeasors, acquires the right to sue for contribution.

Although one could argue § 8.01-35.1 appears to unfairly advantage a non-settling tortfeasor who can now claim shelter from further liability under an agreement to which the non-settling tortfeasor was not a party and for which he gave no consideration, the legal significance of the language does not extinguish absolutely the non-settling tortfeasor's liability. Section 8.01-35.1 merely changes the party to whom the non-settling tortfeasor might be liable. By including all other joint tortfeasors in a release, a settling tortfeasor vests his right to seek contribution from his fellow tortfeasors, whomever they might be. At the point the release is signed, the injured plaintiff has transferred or assigned his right to pursue a claim against other tortfeasors to the settling tortfeasor. Therefore, not only the language of the Release but also its legal significance under the Code bar Plaintiff's current claim in the instant case.

In his brief, Plaintiff correctly asserts that the statute was written to correct the potential hardship facing a plaintiff who wants to settle but knows that, if he settles with one tortfeasor, he will be forever barred from suing any other tortfeasor. (*See* Pl.'s Mem. Opp'n Mot. Dismiss at 3-4.) Yet the Plaintiff has failed to acknowledge that the statute allows the parties to chose which rule they want to follow, either the common law rule or the new statutory rule. If a plaintiff wishes to settle with one tortfeasor and preserve the right to sue other tortfeasors, he may do so by limiting the release to named parties. On the other hand, if the plaintiff wishes to settle the entire suit and let the joint tortfeasors determine who was more at fault, he may do that by releasing all parties. He may not, however, have it both ways. In this case Plaintiff chose the second option, to release all tortfeasors.

Interpreting releases according to the plain meaning of their terms is the only way to give full and legitimate effect to the provisions of Code § 8.01-35.1. Although no Virginia court has ruled directly on this issue, the federal district court in Roanoke has decided a case with similar facts and interpreting Virginia law. *State Farm Mut. Auto. Ins. Co. v. Reynolds*, 676 F. Supp. 106 (W.D. Va. 1987). *Reynolds* was an action for contribution by a settling tortfeasor against a non-settling tortfeasor. The parties settled the personal injury suit and the plaintiff signed a release containing identical language releasing "all other persons, firms, or corporations" from any further liability. The court held that the plaintiff was bound by this release. Notably, no

evidence was presented to contradict the wording of the release and this fact weighed in the court's decision. *See Id.* at 107. However, the Court primarily focused on the legal significance of the Release, which vested in the settling tortfeasor the right to seek contribution from the non-settling tortfeasor. The Court found the "literal test" of interpretation (a test borrowed from federal and other states law, but essentially the same as Virginia's clear meaning test) was mandated by the statute. "Although the instant case concerns a general boiler plate release, the statute does not suggest any reading, other than a literal interpretation, as mandated." *Id.* at 107. Finding that the release was subject to no other reasonable interpretation, the Court held the release binding on the plaintiff.

Virginia law is patterned on the Uniform Contribution Among Tortfeasors Act ("UCATA"), which has been adopted in many states. The model law evolved from a rule advocated by Professors Prosser and Keaton that avoided the harsh inequities of the common law rule. As courts have interpreted the UCATA as adopted by the several states, three views have emerged concerning how courts should interpret the language and decide who is bound by a release, namely the "Absolute" view, the "Intent" view, and the "Expressed Designation" view. *See* Anne M. Payne, Annotation, *Release of One Joint Tortfeasor as Discharging Liability of Others Under Uniform Contribution Among Tortfeasors Act and Other Statutes Expressly Governing Effect of Release*, 6 A.L.R. 5th 883 (1994). This Court finds the "Absolute" view to be the most compelling. Under the "Absolute" view theory, symbolized by the *Reynolds* decision applying Virginia law, when a release names specific persons and then includes "all other persons, firms, etc." language, that language is given its plain meaning and the tort victim has no right of action against any other tortfeasor. The Court concludes that the "Absolute" view is the reasonable and proper method of interpreting releases and that this view gives a full and fair reading to the UCATA.

The Court concludes that the parol evidence rule does not bar a party to a release from introducing evidence of his subjective intent against a non-party to the release. However, the Court finds that evidence of subjective intent — created after the Release was entered into — is not admissible to contradict the express terms of the Release forever discharging all joint tortfeasors in the instant case. Further, the Court finds that the proffered evidence in the instant case is not relevant because the intent of the parties to a contract must be discerned by examining the words they have chosen to express that intent; the words used in the Release clearly and unambiguously release the entire world from any further liability; the only relevant intent is that which the parties manifest at the time they sign the contract; in the instant case the proffered

evidence is of an intent subsequent to the date of the release; and § 8.01-35.1 of the Code of Virginia and the "Absolute" view theory discussed above impose a legal significance to the Release that is independent of the subjective intent of the parties. The Plaintiff is therefore bound by the Release.

The Defendant's Motion to Dismiss is granted.